[No. 70637-9.   En Banc.]
Argued September 13, 2001.   Decided December 27, 2001.

THE STATE OF WASHINGTON, *Respondent*, v. DAMON L. CHAPPLE, *Petitioner*.

*Jodi R. Backlund* and *Manek R. Mistry* (of *Backlund & Mistry*), for petitioner.

*Christopher O. Shea, Prosecuting Attorney*, and *Loren Oakley, Deputy*, for respondent.

BRIDGE, J. — During his trial for second degree rape of a fellow prisoner, Damon Chapple was removed from the courtroom because of his disruptive and dangerous conduct. Chapple asserts that his exclusion violated his federal and state constitutional rights to be present at trial and his right to testify.

We hold that the trial court did not violate Chapple's constitutional rights to testify and be present at trial when it removed him from the courtroom. In so holding, we reiterate our prior decisions that in such circumstances great deference is to be given the trial court, which is in the best position to assess the relative threat and disruptiveness of the defendant within the limitations of the respective courthouse. The decision of the Court of Appeals is herein affirmed.

## FACTS

Damon Chapple has been incarcerated since 1989, serving a 125-year sentence for beating to death a drug dealer, beating and stabbing to death one woman, and robbing and raping another. In 1997, he was charged with second degree rape following an assault on a fellow prisoner. During a pretrial hearing for the rape and assault charges, Chapple was removed from the courtroom for interrupting the proceeding, swearing at the judge, and threatening to kill someone. It appears that Chapple was present for the trial, however, which ended with a hung jury.

At his second trial, Chapple spoke out several times, sometimes with the jury present and sometimes without.

Although Chapple's interaction with the judge began respectfully, he became increasingly hostile as the trial progressed. Initially, Chapple raised objections without the jury present and the trial judge assured him that they were noted on the record. Later, Chapple became more emphatic and used offensive language.[1]

On the second day of the trial, before the jury entered the courtroom, Chapple interrupted his attorney and used a pejorative term for the jury.[2] As the jury entered the courtroom, the following discussion ensued:

THE DEFENDANT: Sure be glad when you get this Klu (sic) Klux Klan meeting over with; I'm getting tired.

THE COURT: Take the jury out.

THE DEFENDANT: For what?

(In the absence of the jury.)

THE DEFENDANT: Shit; for what? Let the motherfuckers stay anyway.

THE COURT: Mr. Chapple, we're not going to have the trial—

THE DEFENDANT: Fuck the jury; fuck the trial; fuck all you motherfuckers. I don't give a fuck about you or this trial or this jury.

THE COURT: If you don't want to participate in the trial, we'll go on without you; that's the only choice you have.

. . . .

THE COURT: You have been here and you have been participating fine up to this point and I hope you would continue to do that and we can get through the trial but if you make statements in front of the jury like that—

THE DEFENDANT: Am I a liar or something?

THE COURT: Will you not do that again?

---

[1] "This is my courtroom." Report of Proceedings (RP) at 176. "They ain't got no business with my God damn letter and they messed up myself acting like I'm threatening somebody; ain't no God damn threat in this motherfucking letter." RP at 174-75.

[2] "those peckerwoods . . . ." RP at 184.

THE DEFENDANT: Am I lying? Did I lie or something?

THE COURT: I am not saying anything about that but disruption in front of the jury cannot take place. Can we try again?

THE DEFENDANT: Continue.[3]

The jury returned. Soon after, during examination of a witness, the defendant interjected:

THE DEFENDANT: He didn't testify for me in the trial, did you, and I got a hung jury so why would I have asked you to do anything for me. You didn't testify in the last trial, did you; shit. I let them know. Take me back to Clallum [sic] Bay if you want to. I wouldn't give a fuck.

THE COURT: Let's take a recess.

THE DEFENDANT: Let's take a recess on me. He didn't testify on the last trial when I got a hung jury 8 to 4 in my favor, so why would it make a difference for you to testify against me, motherfucking—

(The jury left the courtroom.)

THE COURT: We'll take him downstairs.

THE DEFENDANT: I'm the motherfucking man. I have 125 years; I don't give a fuck. Nothing you can do to me. I own the system.

(The defendant left the courtroom.)[4]

After Chapple's removal, the judge expressed concern that Chapple might be attempting to create a mistrial or pollute the jury with information about his first trial. The court then took suggestions from counsel that would permit Chapple to still participate in his trial. The prosecutor raised several options, including binding and gagging the defendant in the courtroom, removing him from the rest of the trial, and placing him in another room with a television system, bound and gagged if necessary. Defense counsel expressed doubts as to his ability to control Chapple's behavior, but suggested that he be allowed to discuss with

[3] RP at 187-88.

[4] RP at 194-95.

the defendant the consequences of his removal from the trial.

The judge then heard testimony from Sergeant Reno, a corrections officer, regarding courtroom security if Chapple were allowed to return. Reno testified that Chapple had previously been convicted for several violent crimes and chronicled Chapple's extensive list of prison infractions including threats, possession of a weapon, and assault. Reno also testified to the defendant's size and extraordinary physical strength, reporting that Chapple could break handcuffs and had once pulled a cell door from a concrete wall. Chapple's threats of violence were taken very seriously; at least four security officers would attend his court appearances and he was required to wear a taser belt.[5] Reno also reported that Chapple had planned to disrupt the trial and had boasted that he would make the news that day. Sergeant Reno concluded that Chapple was a threat to court personnel, even when bound to a chair, gagged, wearing a taser belt and guarded. Another officer testified that as Chapple left the courtroom, he was adamant that he would not cooperate, he would continue to disrupt the proceedings if allowed back into the courtroom, and, because he already had a 125-year sentence, there was nothing more that could be done to punish him.

Thus the judge determined that were Chapple allowed to return, even if bound, gagged, and guarded, he would still present a danger to staff and jury members. The courtroom was not equipped to shackle Chapple to the floor or any other stable structure. Although Chapple could view the trial through closed circuit television from the holding room next door, he might yell and scream or destroy the television. The judge ruled that the best option was to exclude the defendant from the remainder of the trial.

Defense counsel inquired whether the defendant would be allowed to testify. The court reiterated safety concerns and noted that transcripts of the defendant's previous trial

---

[5] A taser belt can emit a blast that incapacitates a prisoner for eight seconds.

testimony were available. The judge believed that Chapple had waived both his right to be present and his right to testify. However, the court asked counsel to speak with his client during recess regarding whether he could restrain himself sufficiently to return to the trial.

After the recess, defense counsel reported:

> Certainly nothing occurred which would suggest things would be any different than they have been in terms of nothing like an agreement to conduct himself any differently. As far as testifying, his intent would be to testify although it is clear that that would be done according to his rules . . . . [He is] absolutely adamant about not being restrained by questions and answers.[6]

The judge concluded that Chapple had shown no change in attitude and remained dangerous. The court ordered that the trial proceed without Chapple and explained that defense counsel could use all or part of Chapple's testimony from the first trial, with redactions.

On the third day of trial, defense counsel restated Chapple's wish to testify in person. When questioned about his conversations with Chapple, however, defense counsel stated again that Chapple would insist on being allowed to talk freely to the jury. The court reiterated that Chapple presented a safety concern and declared that Chapple would not be allowed to return. Chapple was convicted and sentenced to life in prison without the possibility of parole.

On appeal Chapple claimed that the trial court erred by excluding him from the second trial and admitting prior testimony. The Court of Appeals disagreed and held that Chapple had waived both his right to be present at trial and his right to testify. *State v. Chapple*, 103 Wn. App. 299, 12 P.3d 153 (2000). The court reasoned first that removal of a defendant for disruptive behavior is within the trial court's discretion. Applying the standard set forth by the United States Supreme Court in *Illinois v. Allen*, 397 U.S. 337, 343,

---

[6] RP at 216. Counsel noted on the record that he was careful to avoid violating the attorney-client privilege. RP at 215.

90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970), the court deter-
mined that the trial court gave Chapple adequate warning
regarding the consequences of continuing such disruptive
behavior, the defendant nevertheless continued to disrupt
the trial, the court took testimony about Chapple's procliv-
ity for violence which eliminated alternatives to removal,
and the court sent defense counsel to ask the defendant if
he could behave appropriately if returned to the courtroom.
*Chapple*, 103 Wn. App. at 310. We agree.

## ANALYSIS

## I

## Right of Confrontation

A criminal defendant has a constitutional right to be
present in the courtroom at all critical stages of the trial
arising from the confrontation clause of the Sixth Amend-
ment to the United States Constitution, applied to the
states through the Fourteenth Amendment. The Washing-
ton State Constitution also provides a criminal defendant
with "the right to appear and defend in person." WASH.
CONST. art. I, § 22. Additionally, Washington's criminal rules
state that "[t]he defendant shall be present . . . at every
stage of the trial . . . except . . . for good cause shown." CrR
3.4(a).

The right to be present during trial is not absolute,
however. Both the United States Supreme Court and this
court have held that a defendant's persistent, disruptive
conduct can constitute a voluntary waiver of this right.
*Allen*, 397 U.S. at 343; *State v. DeWeese*, 117 Wn.2d 369,
381, 816 P.2d 1 (1991). In *Allen*, the Court evaluated the
ejection of a criminal defendant from the courtroom for
repeated disruptive behavior. 397 U.S. at 340-41. The Court
explicitly held that:

> [A] defendant can lose his right to be present at trial if, after he
> has been warned by the judge that he will be removed if he

continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.

*Id.* at 343 (footnote omitted).

█ Furthermore, the Court explained that "trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." *Id.* The Court held that there are "at least three constitutionally permissible ways" to handle a disruptive defendant: the defendant could be bound and gagged in the courtroom, the court could cite the defendant for contempt, or it could remove the defendant until assurances are made that he will conduct himself properly. *Id.* at 343-44.

The Court held that under the circumstances, the trial court's decision to remove Allen from the courtroom and continue the trial in his absence until he promised to behave was constitutionally permissible. *Id.* at 345-46. Allen's behavior was of "an extreme and aggravated nature," and he was warned that removal could occur. *Id.* at 346. Finally, once removed, Allen was "constantly informed that he could return to the trial when he would agree to conduct himself in an orderly manner." *Id.* The trial court acted well within its discretion, given the importance of protecting this country's "citadels of justice" from such "scurrilous, abusive language and conduct." *Id.* at 347.

In 1991, this court adopted the *Allen* standard in evaluating a defendant's ejection from his trial. *DeWeese*, 117 Wn.2d 369. DeWeese had conducted his own defense without incident until the third day of trial when his behavior "degenerated into a series of disruptions of the State's case." *Id.* at 373. DeWeese argued that the victims were

"prostitutes" when the court had prohibited such references. *Id*. After a warning, the court removed the defendant to another room where he could watch the trial on television. *Id*. When invited to return, DeWeese refused. *Id*. at 373-74.

On appeal, DeWeese argued that the trial court denied him a fair trial by removing him. *Id*. at 380. This court remarked that "[t]he manner of maintaining order in the courtroom is within the trial judge's discretion" but "the least severe remedy to accomplish the result is preferable." *Id*. DeWeese "was offered the opportunity to remain in court if he could adhere to the rules," and he was allowed to watch the trial in another room. *Id*. at 381. Because DeWeese's removal was within the trial judge's discretion and his continued absence was voluntary, we held that DeWeese's right to be present during trial was not violated. *Id*. at 381-82.

■ Although both *Allen* and *DeWeese* held that the appropriate method for dealing with a disruptive defendant should be left to the discretion of the trial judge, both courts set forth basic guidelines to assist trial courts in such circumstances. First, the defendant should be warned that his conduct could lead to removal. *Allen*, 397 U.S. at 343; *DeWeese*, 117 Wn.2d at 380. Second, the defendant's conduct must be severe enough to justify removal. *Allen*, 397 U.S. at 343; *DeWeese*, 117 Wn.2d at 380. Third, this court has expressed a preference for the least severe alternative that will prevent the defendant from disrupting the trial. *DeWeese*, 117 Wn.2d at 380. Finally, the defendant must be allowed to reclaim his right to be present upon assurances that the defendant's conduct will improve. *Allen*, 397 U.S. at 343; *DeWeese*, 117 Wn.2d at 381. The guidelines are not meant to be constraints on trial court discretion, but rather to be relative to the exercise of that discretion such that the defendant will be afforded a fair trial while maintaining the safety and decorum of the proceedings.

## Adequate Warning

■ Although Chapple argues that the trial court never explicitly warned that he could be removed upon further disruption and that the court's failure to admonish him implied he would not be excluded if he continued to interrupt, when read in its entirety the conversation after the defendant's "Ku Klux Klan" comment constituted an adequate warning. The court said, "[i]f you don't want to participate . . . , we'll go on without you." Report of Proceedings (RP) at 187. He also began, "if you make statements in front of the jury like that," but was interrupted. RP at 188. The trial court did manage to state, "disruption in front of the jury cannot take place." *Id.* Given that the defendant was removed from his first trial for similar disruptions, the totality of the conversation provided adequate warning that Chapple could be removed. Soon after this warning, the defendant exclaimed, "[t]ake me back to Clallum [sic] Bay if you want to. I wouldn't give a fuck," indicating that Chapple understood he could be removed.[7] RP at 194.

■ Chapple also argues that because both Allen and DeWeese were "repeatedly warned" before removal, *Allen,* 397 U.S. at 346; *DeWeese,* 117 Wn.2d at 380, his single warning does not amount to proper preremoval procedure. Authorities conflict on this point.[8] We side with the courts that have determined that multiple warnings are not required prior to a defendant's removal from the courtroom. We interpret the *Allen* Court's recognition that no single

---

[7] In comparison, the Minnesota Supreme Court has held that a statement that corrective measures would be taken, without an explicit warning that the defendant would be removed, satisfied *Allen. State v. Kluck,* 299 Minn. 161, 217 N.W.2d 202, 207 (1974).

[8] The Eighth and Tenth Circuits each have held that a defendant's removal from the courtroom was proper, despite a single warning. *Scurr v. Moore,* 647 F.2d 854, 858 (8th Cir. 1981) ("no 'formalistic sequence of warnings' is required" (quoting *State v. Moore,* 276 N.W.2d 437, 440 (Iowa 1979)), noting only one warning was given before Allen's first removal); *United States v. Munn,* 507 F.2d 563, 567 (10th Cir. 1974) (holding second warning was unnecessary before removal). Likewise, the Georgia Supreme Court has recognized that in some extreme situations removal with no warning could be appropriate. *State v. Fletcher,* 252 Ga. 498, 314 S.E.2d 888, 890 (1984) (holding immediate removal was appropriate where defendant threw a table and struggled with police).

formula for maintaining courtroom order should be imposed on trial courts to mean that a single warning can be constitutionally permissible. *See Allen*, 397 U.S. at 343; *DeWeese*, 117 Wn.2d at 380. Accordingly we hold that Chapple received adequate warning prior to his removal.

## Severity of Conduct

▊ Chapple further argues that his disruptions in front of the jury were not as extreme as the incidents in *Allen* and *DeWeese*, and therefore were insufficient to justify removal. Chapple was presumably ejected for interrupting the proceedings, speaking disrespectfully, and introducing information about his previous trial that might have prejudiced the jury. Allen did go beyond mere interruptions to threaten the judge and throw files. *Allen*, 397 U.S. at 340. The trial court in *DeWeese*, however, removed the defendant for behavior almost identical to Chapple's. *DeWeese*, 117 Wn.2d at 373 (noting DeWeese had interrupted the proceedings and made prejudicial remarks in front of the jury).

Both the *Allen* and *DeWeese* courts emphasized that a trial judge should be afforded extensive discretion in determining how to deal with a disruptive criminal defendant. *Allen*, 397 U.S. at 343; *DeWeese*, 117 Wn.2d at 380. *See also Kulas v. Flores*, 255 F.3d 780, 786 (9th Cir. 2001) ("Since the trial judge bears the responsibility for maintaining order and the appellate court is limited to reviewing a cold record, we give substantial deference to the trial judge's decisions about courtroom management.").

Courts have only occasionally held that removal of a disruptive defendant was not appropriate. For example, in *Badger v. Cardwell*, the Ninth Circuit held that a defendant's ejection from the courtroom was improper where, while representing himself, the defendant interrupted, repeated himself, and was occasionally irrelevant, but frequently apologized. 587 F.2d 968, 974-75 (9th Cir. 1978). However, the *Badger* court also noted that where the defendant did not play the role of counsel, similar interruptions would not be tolerated. *Id.* at 973 (citing *United States*

*v. Kizer*, 569 F.2d 504, 507 (9th Cir. 1978) (holding mere interruptions were enough where defendant was represented by counsel)). Affording the trial court deference, we hold that the trial court here was justified in removing Chapple from the courtroom.

## Least Restrictive Means

■ Chapple claims that the trial court should have permitted him to watch the trial on a closed circuit television in another room. He contends that the trial court's concern regarding the destruction of county property was unjustified because the court could have explored additional arrangements (like guards or binding and gagging him in the viewing room) that would have minimized such a risk. The court did consider these and other options and determined that Chapple would still pose a threat and could still disrupt the trial.

The trial court in this case collected testimony from corrections officers regarding the viability of alternative options before concluding that continued exclusion was appropriate. The trial judge heard testimony regarding Chapple's strength, his potential for violence, and his attitude that the court could impose no additional negative consequences on him. As a result, the trial judge determined that even if Chapple were allowed to watch the proceedings on a television in an adjacent room, he could have disrupted the trial. In addition, the court was concerned that, given Chapple's increasingly agitated behavior, he might destroy the television or other court property.

In *DeWeese*, this court stated that "[t]he manner of maintaining order in the courtroom is within the trial judge's discretion," but "the least severe remedy to accomplish the result is preferable." *DeWeese*, 117 Wn.2d at 380. DeWeese was placed in a room with a video monitor, which allowed him to follow the trial. *Id.* at 381. Furthermore, the *Allen* Court emphasized the importance of effective communication between the defendant and his counsel. *Allen*, 397

U.S. at 344. Since *Allen*, many courts have managed to maintain contact between a disruptive defendant and his attorney through various forms of technology, including interactive video and telephone systems.[9]

Therefore, while the defendant should be afforded great protections to ensure his constitutional rights to be present at trial, this right is not absolute and certain circumstances may warrant the defendant's complete removal. The trial court is in the best position to assess the technological limitations of the respective courthouse and the impending threat of the defendant. The trial judge in this instance witnessed the defendant's disrespectful behavior, could see the defendant's physical size and heard testimony regarding the defendant's extraordinary strength. We hold that the trial judge adequately considered technological alternatives and did not violate Chapple's right to be present at trial.

## Opportunity to Return

■ Finally, Chapple argues that the trial court erred in not informing him, on the record, that he could return whenever he chose to conduct himself appropriately. Instead, the trial court sent defense counsel to inquire whether the defendant wanted to return and, if so, if he could conduct himself appropriately. Defense counsel reported back, on the record, that the defendant would not agree to behave differently if allowed to return. Although it is not clear from the record whether the defendant was consulted again on the last day of trial, the judge and defense counsel did discuss the defendant's absence again that morning. At that time, defense counsel did not introduce new information that would indicate that the defen-

---

[9] *See, e.g., State v. Gillam*, 629 N.W.2d 440 (Minn. 2001) (giving defendant option of using room with interactive video capabilities); *United States v. Ives*, 504 F.2d 935, 938 (9th Cir. 1974) (utilizing special phone system connecting defense counsel with defendant's cell), *vacated on other grounds*, 421 U.S. 944 (1975), *opinion reinstated in relevant part*, 547 F.2d 1100 (1976); *Munn*, 507 F.2d at 567 (allowing defendant to hear trial through broadcast system).

dant might be willing to cooperate if allowed to return. In fact, defense counsel stated just the opposite.

The *Allen* Court held that "[o]nce lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Allen*, 397 U.S. at 343. Allen returned to the courtroom twice upon agreements that he would conduct himself properly. *Id.* at 340-41. DeWeese was also invited back to the courtroom at least twice, though he declined each invitation. *DeWeese*, 117 Wn.2d at 374. Neither court set forth specific requirements for inviting disruptive defendants to return, however.

Other courts have evaluated whether a defendant was adequately informed of his right to return, with varying results. For example, when conducting habeas review of a California trial court's decision to remove a defendant from trial, a federal district court held that the trial court erred in relying on defense counsel to convey a message that the defendant could reclaim his right to be present. *Chavez v. Pulley*, 623 F. Supp. 672, 682 (E.D. Cal. 1985). The federal court reasoned that even if it could assume that defense counsel's report were accurate, the more important inquiry involved what counsel said to the defendant. *Id.* Because the trial court did not bring the petitioner back to the courtroom to emphasize the right to return or send a court reporter to record an assurance conveyed by the bailiff or defense counsel, the trial court committed constitutional error. *Id.* Similarly, the Georgia Supreme Court has held that a trial court erred in not bringing the defendant back to the courtroom to inform him of his ability to reclaim his right to be present, where the defendant was removed without warning. *State v. Fletcher*, 252 Ga. 498, 314 S.E.2d 888, 890-91 (1984).

In contrast, the Eighth Circuit has reasoned that, although it is desirable for the trial judge to assure the defendant that he or she can later return, the *Allen* Court created no absolute requirement. *Scurr v. Moore*, 647 F.2d

854, 858 (8th Cir. 1981) (noting defendant was excluded for only a short time). Similarly, the Tenth Circuit rejected an argument that disruptive defendants should be returned to the courtroom each morning and allowed to remain unless and until their behavior requires ejection. *United States v. Nunez*, 877 F.2d 1475, 1478 (10th Cir. 1989). State courts have reached similar conclusions. *People v. Robinson*, 285 A.D.2d 478, 728 N.Y.S.2d 482 (2001) (allowing continued removal of a defendant who communicated through attorney that he would continue disruptive behavior if allowed to return to courtroom); *State v. Gillam*, 629 N.W.2d 440, 452 (Minn. 2001) ("*Allen* indicates that the defendant has the burden to inform the court when he is ready to physically return and conform his conduct to the requirements of the court."). Therefore, despite the *Allen* Court's declaration that the defendant's right can be reclaimed, lower courts have interpreted this right to require varying degrees of trial court involvement in the reclamation. We hold that the trial court's requirement that defense counsel speak with the defendant and report back to the court was appropriate in these circumstances and adequate to give the defendant an opportunity to reclaim his right to return.[10]

## II

### Right to Testify

██ The United States Supreme Court recognized a criminal defendant's right to "take the witness stand and to testify in his or her own defense" in *Rock v. Arkansas*, 483 U.S. 44, 49, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987). However, this "right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Id.* at 55 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)).

The Ninth Circuit in *United States v. Ives*, evaluated whether the trial court had properly refused to allow a

---

[10] It might be inappropriate for a trial court to insinuate into a decision to return and thus communication through defense counsel is preferable.

defendant to testify after the defendant was removed from trial for contumacious conduct. 504 F.2d 935, 937 (9th Cir. 1974), *vacated on other grounds*, 421 U.S. 944 (1975), *opinion reinstated in relevant part*, 547 F.2d 1100 (1976). The *Ives* court analogized the waiver of the right to testify to *Allen*'s waiver of the right to be present at trial:

> It is evident that the conduct of a defendant in the courtroom can become so inconsistent with the necessary decorum for effective administration of justice that reasonable restraints are necessary. It is even more evident that such conduct cannot be allowed when the defendant takes center stage on the witness stand.

*Id.* at 941. The *Ives* court also noted that great discretion should be given to the trial judge's determination that a defendant has waived his right to testify by way of his conduct:

> Since we must judge the evidence from a cold record, the appellate court is not in as good a position as the trial judge to determine the effect a defendant's disruptive conduct may have had on the proceedings. Even though facial expressions, gestures and other nonverbal conduct are often tremendously significant, they cannot be transcribed by the court reporter. Therefore, great deference must be given to the decision of the trial judge.

*Id.* at 942. The court then emphasized that a trial judge must be careful to properly balance the constitutional rights of the defendant against the necessary decorum of the courtroom. *Id.* Therefore, a trial judge should consider the gravity of the past disruptions, probability of continued disruption, and the possibility of violence if the defendant takes the stand. *Id.*

In *State v. Thomas*, 128 Wn.2d 553, 910 P.2d 475 (1996), this court evaluated whether a trial court erred by not directly advising the defendant of his constitutional right to testify on his own behalf. *Id.* at 554. A defendant's waiver of the right to testify must be made knowingly, intelligently, and voluntarily. *Id.* at 558. In *Thomas*, defense counsel filed an affidavit stating that after discussion of the

benefits and risks of testifying, the defendant chose not to testify on his own behalf. *Id.* at 556. This court held that the trial judge is not required to advise a defendant of his or her right to testify in order for a waiver to be valid. *Id.* at 557. In fact, this court expressed concern that a warning from the judge regarding the risks of waiving the right to testify might improperly impact the defendant's right *not* to testify. *Id.* at 560. This court reasoned that judges should not intrude on this important communication between the client and his or her attorney. *Id.*

██ Chapple argues that the trial court's determination that he had waived his right to testify was not justified. But Chapple was gravely disruptive, he refused to conform with a question and answer format if allowed to testify, and his guards believed that violent behavior on the stand was a distinct possibility, especially if Chapple became agitated. Furthermore, great deference is to be given to a trial judge's decision that a defendant had waived his right to testify through his or her conduct. *Ives*, 504 F.2d at 941.

██ Chapple also argues that the trial court erred by failing to warn him, on the record, that he was placing his right to testify in jeopardy by his disruptive conduct. Although the *Thomas* case is not acknowledged in petitioner's briefing, that case explicitly held that a trial judge need not, and perhaps should not, discuss a defendant's potential waiver of his right to testify on the record. The trial court here sent Chapple's counsel to explain under what circumstances Chapple would be allowed to testify and counsel reported on the record that he had done so. As with decisions regarding the proper method to communicate a defendant's opportunity to return to trial, the trial court should enjoy deference in its evaluation of whether a defendant is likely to more positively respond to counsel than to the judge. Thus we hold that Chapple knowingly, intelligently, and voluntarily waived his right to testify by conducting himself inappropriately and by refusing to testify according to the rules of the court. Additionally, the trial judge did not err by failing to return Chapple to the

courtroom to explain on the record that he had waived his right to testify.

## CONCLUSION

The trial court adequately warned Chapple that his continued behavior would lead to removal, Chapple was sufficiently disruptive to warrant removal, the trial court adequately considered other alternatives to complete removal, and the trial court justifiably relied on defense counsel to convey to his client that the defendant could reclaim his right to be present upon assurances of proper behavior. The trial court was adequately assured, through defense counsel's report on the record, that Chapple understood that he was waiving his right to testify by refusing to comply with the question and answer format. Therefore, Chapple waived both his right to be present at trial and his right to testify by refusing to properly conduct himself during trial.

Affirmed.

ALEXANDER, C.J., and SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, CHAMBERS, and OWENS, JJ., concur.

Reconsideration denied February 12, 2002.