# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46012-2-II |
| Respondent, | |
| v. | |
| NICHOLAS BOSTROM THOMPSON, | PART PUBLISHED OPINION |
| Appellant. | |

LEE, J. — Nicholas Bostrom Thompson appeals his conviction of one count of attempted first degree robbery, three counts of first degree robbery, one count of first degree assault, and one count of first degree unlawful possession of a firearm. Thompson contends that the trial court (1) violated his right to be present during trial by removing him from the courtroom because of his disruptive conduct without informing him that he could return if he behaved; (2) violated his right to a speedy trial under CrR 3.3 by granting several continuances of his trial date; and (3) erred in denying his motion to dismiss based on the State's seizure of legal materials from his jail cell. In a pro se statement of additional grounds (SAG), Thompson makes a further allegation of misconduct concerning the confiscation of his legal materials.

In the published portion of this opinion, we hold that the trial court did not violate Thompson's right to be present because the trial court adequately informed Thompson of the means by which he could return to court. In the unpublished portion of this opinion, we hold that

the trial court did not abuse its discretion in granting the continuances that defense counsel requested and that the trial court did not err in denying the motion to dismiss because Thompson did not demonstrate either misconduct or resulting prejudice with regard to the seizure of his legal materials. Also, we reject Thompson's SAG argument concerning the confiscation of additional property because he fails to establish prejudice. Accordingly, we affirm Thompson's convictions.

FACTS

Late one evening, Thompson approached a group of high school students, two of whom were sitting in a car. Thompson pulled out a gun and ordered the students to surrender their possessions. Three of them handed over backpacks and other items, while the two girls in the car closed and locked the doors.

After looking through the items, Thompson demanded the car. When one of the boys protested and tried to get the gun, Thompson shot him in the abdomen. The other boys wrestled Thompson to the ground and held him until the police arrived. The State charged Thompson with four counts of first degree robbery while armed with a firearm and one count each of first degree assault while armed with a firearm, first degree unlawful possession of a firearm, and possession of a stolen firearm.[1]

When Thompson's trial began on January 28, 2014, he wore a leg restraint. Before testimony began on February 3, jail personnel asked for increased restraints due to an altercation at the jail involving Thompson. After a hearing on the matter, the trial court authorized the placement of a stun device under Thompson's clothing.

---

[1] The trial court dismissed the stolen firearm charge on the State's motion at the end of trial.

Later that same day, after the State asked a witness about her credentials, Thompson pushed over the counsel table at which he was seated, yelled several profanities, and struggled with corrections officers before being subdued and removed from the courtroom. When he returned in handcuffs, shackles, and a belly chain, the trial court ruled that he would be taken to another courtroom where he could attend the trial over a video feed. The trial court informed Thompson that he would have the right to reclaim his presence if he assured the court that his behavior would improve. Specifically, the court stated:

> And, of course, Mr. Thompson has the right to reclaim his ability to be present in court upon a real assurance that his conduct will improve and that he will not be verbally or physically disruptive.

4 Verbatim Report of Proceedings at 724. The trial court also explained that it would recess the trial after the direct examination of each prosecution witness so that defense counsel could consult with Thompson before the proceedings continued.

Three witnesses then testified. Before the trial recessed for the day, the trial court reminded Thompson that he could return to the courtroom the following day if he agreed to behave. Thompson was instructed to inform his attorney or corrections staff of his decision.

On February 4, the trial court noted that it would not further inquire into Thompson's desire to return to the courtroom because it had explained the procedure by which he could return the day before and had heard nothing from him. After the State rested, Thompson declined to testify, and the jury retired to deliberate at the end of the day.

On February 5, the jury found Thompson guilty as charged except for count I, where it returned a verdict on the lesser included offense of attempted first degree robbery. The jury also found, by special verdict, that Thompson committed all of the offenses (except the firearm

possession) while armed with a firearm, and that he committed the offenses shortly after being released from incarceration.

The trial court imposed an exceptional sentence of 765 months supported by (1) the jury's finding that Thompson committed the offenses after his recent release from incarceration and (2) the trial court's own finding that Thompson's high offender score resulted in some of his offenses going unpunished. Thompson appeals his convictions.

ANALYSIS

Thompson argues that the trial court denied his right to be present at trial by removing him from the courtroom for the final three days of trial without informing him daily that he could return if he conducted himself properly. We disagree.

A criminal defendant has a constitutional right to be present in the courtroom at all critical stages of the trial. *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011)*; State v. Chapple*, 145 Wn.2d 310, 318, 36 P.3d 1025 (2001). This right derives from the constitutional right to confront adverse witnesses and the Washington rules of criminal procedure. *Chapple*, 145 Wn.2d at 318; CrR 3.4(a). Whether a defendant's constitutional right to be present has been violated is a question of law that we review de novo. *Irby*, 170 Wn.2d at 880.

The right to be present is not absolute. *Chapple*, 145 Wn.2d at 318. A defendant's persistent, disruptive conduct can constitute a voluntary waiver of the right to be present in the courtroom. *Illinois v. Allen*, 397 U.S. 337, 343, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970); *State v. DeWeese*, 117 Wn.2d 369, 381, 816 P.2d 1 (1991). Once lost, this right can be reclaimed "as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Allen*, 397 U.S. at 343.

A trial court has wide discretion in determining the appropriate means to deal with a defendant's disruptive courtroom behavior. *Id.*; *Chapple*, 145 Wn.2d at 320. "No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." *Allen*, 397 U.S. at 343.

While recognizing that the appropriate method for dealing with a disruptive defendant should be left to the trial judge's discretion, the *Chapple* court set forth basic guidelines to assist trial courts in exercising their discretion. 145 Wn.2d at 320. First, the defendant must be warned that his conduct may lead to removal. *Id.* Second, the defendant's conduct must be severe enough to justify removal. *Id.* Third, the trial court should employ the least severe alternative that will prevent the defendant from disrupting the trial. *Id.* Fourth, the defendant must be allowed to reclaim his right to be present upon assurances that his or her conduct will improve. *Id.* These guidelines are intended to ensure that trial courts exercise their discretion in a manner that affords defendants a fair trial while maintaining the safety and decorum of the proceedings. *Id.*

On appeal, Thompson takes issue only with the trial court's application of the fourth guideline. He urges this court to adopt a new rule of law providing that whenever a defendant is removed from the courtroom during trial for contemptuous behavior, the trial judge must inform the defendant on each new day of trial that he may return upon a promise of appropriate behavior. Thompson asserts that the trial court violated his right to be present in the courtroom by removing him from February 3-5 without informing him each day of the conditions upon which he could return. We see no violation of Thompson's right to be present on this record and no need to impose a requirement that a defendant be reminded daily about how he can reclaim his right to be present in the courtroom.

Thompson's outburst, which included overturning counsel table, yelling profanities, and struggling with corrections officers, occurred at the beginning of the fourth day of trial on February 3. When the trial court removed him from the courtroom to observe the rest of the day's proceedings via a video feed, it reminded him that he could return if he assured the court that he would behave. At the end of the day, the trial court again reminded Thompson that he could return to court upon assurances that his conduct would improve. At the beginning of trial on February 4, the trial court stated that it would not further inquire into Thompson's absence because it had made clear the procedure by which he could return to court the previous day and had heard nothing from him. The jury began deliberating at the end of the day and returned its verdicts on February 5.[2]

Contrary to Thompson's assertions on appeal, the record does not show that the trial court barred him from the courtroom for three days without explanation. Rather, the record reveals that the trial court made certain that Thompson understood the rules by which he could return to court and that Thompson voluntarily declined to be present during the final three days of trial. We see no violation of the *Chapple* guidelines. Nor do we see that additional guidelines are necessary to protect a defendant's right to be present at trial.

Trial courts must clearly inform a defendant who has been removed from the courtroom for disruptive behavior of his right to return to the courtroom and the way in which he may exercise that right. This requirement preserves the defendant's right to be present as well as the trial court's discretion in maintaining the safety and decorum of the courtroom. Here, the trial court clearly

---

[2] The record does not support Thompson's assertion that the trial court brought him into the courtroom on February 4 to inquire about his desire to testify without addressing his right to be present for the rest of the trial. The inquiry about Thompson's possible testimony took place via the video feed.

informed Thompson of both his right to return and the manner in which he could exercise that right. We decline to impose an additional requirement of a daily reminder. Accordingly, we affirm his convictions.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ADDITIONAL FACTS

Trial Continuances

Thompson appeared for arraignment on December 26, 2012, and the trial court set a trial date for the week of February 19, 2013. Thompson remained in custody throughout the proceedings.

On January 28, defense counsel requested a continuance. Defense counsel made the request despite Thompson's objection because he had not yet interviewed the victims and witnesses and because his investigator had just started working on the case. Defense counsel referred to the severity of the charges and the potential sentence in seeking additional time to prepare. The State did not object, noting that it was still obtaining medical records and had not yet turned over the discovery. The trial court agreed to a shorter continuance than requested and set a new trial date of March 11.

On February 11, the parties agreed to another continuance and the trial court reset the trial date to May 27, 2013. Thompson again objected. On April 23, the trial court reset the trial date to August 5, again with the parties' agreement but over Thompson's objection.[3]

On July 8, defense counsel moved to continue the trial to the week of September 23, and Thompson again objected. Counsel explained that the witness interviews had not yet been transcribed and that a forensic psychologist would be interviewing Thompson to determine whether he could pursue a diminished capacity defense. Counsel added that he would be out of the office for the next two weeks and that he could not litigate the many motions that Thompson wanted him to pursue before the current August trial date. The State did not object, and the trial court continued the trial to September 23.

On September 5, the trial court held a hearing on several matters, including defense counsel's motion to withdraw. After Thompson refused to decide whether he wanted to keep the current trial date or get a new attorney who would need additional time to prepare, the trial court granted the motion to withdraw. The trial court set a new trial date of November 4 over Thompson's objection so that the new defense and prosecuting attorneys could prepare for trial.[4]

On October 21, the trial court granted another continuance, over Thompson's objection, and the trial court set the new trial date for January 27, 2014.[5] Trial began the next day.

---

[3] The transcripts explaining the reasons for the February 11 and April 23 continuances are not in the appellate record.

[4] The current prosecuting attorney was scheduled for maternity leave.

[5] The transcript explaining the reason for this continuance is not part of the appellate record.

Motion to Dismiss

Thompson's new attorney filed a motion to dismiss that the trial court heard on January 13, 2014. In that motion, Thompson complained that during a search of his cell on March 9, 2013, jail personnel had found a letter addressed to his former attorney in which Thompson set out confidential information and trial strategy. Thompson alleged that two pages of the letter had been confiscated.

Thompson and two other inmates testified about the search. One inmate testified that he saw the search of Thompson's cell and later saw officers reading some seized material, though he could not see what they were reading. Thompson's cellmate testified that he saw Thompson seal a three- to four-page letter before the search but that he did not see the search itself. Thompson testified that despite the seizure of the two pages, he continued to communicate with his attorney and wrote him other letters.

Two corrections officers testified that they did not search Thompson's cell and did not know who did. They explained that jail cell searches are routine and that sealed envelopes are opened but left in the cell if they contain legitimate legal material. The officers added that they did not see the pages from the letter that Thompson described and did not provide any information about his case to the State. One officer testified that she did read song lyrics seized from another inmate's cell. The trial court denied the motion to dismiss and entered written findings of fact and conclusions of law supporting its ruling.

ANALYSIS

A.    RIGHT TO SPEEDY TRIAL

Thompson argues that the trial court violated his right to a speedy trial under CrR 3.3 by continuing his trial almost one year beyond the initial trial date over his repeated objections. We disagree.

We review a trial court's decision to grant a motion for a continuance for abuse of discretion. *State v. Ollivier*, 178 Wn.2d 813, 822-23, 312 P.3d 1 (2013), *cert. denied*, 135 S. Ct. 72 (2014). Discretion is abused if it is exercised on untenable grounds or for untenable reasons. *State v. Nguyen*, 131 Wn. App. 815, 819, 129 P.3d 821 (2006).

Under CrR 3.3(b)(1)(i), a defendant held in custody pending trial must be tried within 60 days of arraignment. *Ollivier*, 178 Wn.2d at 823. Continuances granted by the court are excluded from the computation of time. CrR 3.3(e)(3). If a period is excluded, "the allowable time for trial shall not expire earlier than 30 days after the end of that excluded period." CrR 3.3(b)(5). The trial court may grant a party's motion to continue the trial date when it "is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense." CrR 3.3(f)(2). The court must "state on the record or in writing the reasons for the continuance." CrR 3.3(f)(2).

Continuances granted within the speedy trial time are not violations of the rule; dismissal is required only when the speedy trial period has expired. *State v. Hall*, 55 Wn. App. 834, 841, 780 P.2d 1337 (1989). Absent such a violation, a defendant must demonstrate actual prejudice to obtain dismissal. *Id.* Further, a motion for continuance on behalf of any party waives that party's objection to the requested delay. CrR 3.3(f)(2).

Thompson takes issue with the trial court's reasons for continuing his trial, arguing that despite defense counsel's claims that he needed more time because the case was complex, "the court's own statements, the evidence presented at trial, and the defense's failure to even cross-examine the majority of the state's witnesses belies this claim." Br. of Appellant at 17. We reject this reading of the record.

The hearing transcripts show that defense counsel sought several continuances, with the State's agreement, for multiple reasons: he needed additional time to prepare, the charges were serious and Thompson faced a lengthy sentence, Thompson wanted to litigate numerous motions and pursue a diminished capacity defense, and the case involved considerable discovery and numerous witnesses. (At one hearing, the State referred to 450 pages of discovery and 32 potential witnesses.)[6] In addition, some of the delay was caused by Thompson's efforts to pursue pro se motions while being represented by counsel.[7] And, after Thompson's first attorney withdrew, his new attorney needed time to prepare.

The record shows that the trial court found that the continuances requested were necessary for the administration of justice. *See State v. Flinn*, 154 Wn.2d 193, 200, 110 P.3d 748 (2005) (allowing counsel time to prepare for trial is valid basis for continuance). It also shows that the

---

[6] Thompson has not provided transcripts for the continuances granted on February 11, April 23, and October 21. In the absence of this record, we will not speculate about the reasons for these continuances, and we will not conclude that they constituted an abuse of discretion. *See State v. Blight*, 89 Wn.2d 38, 46, 569 P.2d 1129 (1977) (reviewing court may not speculate about existence of facts if they are not in the record).

[7] Thompson filed multiple pro se motions that included requests for a bill of particulars, a *Franks* hearing, and additional discovery, as well as allegations of ineffective assistance of counsel, governmental misconduct, and speedy trial violations. *See Franks v. Delaware*, 438 U.S. 154, 155, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

motions at issue were brought by defense counsel. A motion for continuance on behalf of any party waives that party's objection to the requested delay. CrR 3.3(f)(2). Moreover, Thompson does not argue that he suffered actual prejudice as a result of the continuances granted. Thus, the trial court did not abuse its discretion in granting the continuances, and the trial court did not violate Thompson's right to a speedy trial under CrR 3.3.

B.  DISMISSAL UNDER CRR 8.3(B)

Thompson argues that the trial court erred in denying his motion to dismiss based on the seizure of part of a letter from his jail cell. We disagree.

A trial court may not dismiss charges under CrR 8.3(b) unless the defendant shows by a preponderance of the evidence both arbitrary action or governmental misconduct and prejudice affecting a defendant's right to a fair trial. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). Dismissal under CrR 8.3(b) is an extraordinary remedy that the trial court should use only as a last resort. *State v. Brooks*, 149 Wn. App. 373, 384, 203 P.3d 397 (2009). We review the trial court's decision for abuse of discretion. *Id.*; *State v. Miller*, 92 Wn. App. 693, 702, 964 P.2d 1196 (1998), *review denied*, 137 Wn.2d 1023 (1999).

In his written motion, Thompson alleged that on March 9, 2013, his jail cell was searched and two pages of a four-page letter to his former attorney were taken and never returned. During the hearing, Thompson testified that despite his failure to obtain the missing pages, he continued to communicate with his attorney and wrote multiple letters to the State, defense counsel, and the court. Defense counsel argued that the search constituted misconduct but offered no argument concerning prejudice. The trial court concluded that the evidence was insufficient to prove misconduct or to demonstrate prejudice and that dismissal of the charges was not appropriate.

We agree that Thompson has not shown by a preponderance of the evidence that misconduct occurred. His testimony is the only evidence supporting the allegation that jail personnel kept two pages of a letter that he wrote to his attorney. In reviewing the trial court's conclusion that Thompson failed to show prejudice, we note that the trial court is in the best position to evaluate credibility and weigh evidence. *State v. Glenn*, 115 Wn. App. 540, 546, 62 P.3d 921, *review denied*, 149 Wn.2d 1007 (2003). Thompson now claims that the trial court ignored his argument that his inability to trust in the confidentiality of written communication with his attorney had the effect of cutting off confidential written access to his counsel. But Thompson's own statements during the hearing undermine this claim. Thus, the trial court did not abuse its discretion in denying Thompson's motion to dismiss the charges against him under CrR 8.3(b).

C.      SAG ISSUE

Thompson argues in his SAG that he was taken to "the hole" without all of his property on January 31, 2014, and that his property was not returned until February 6, the day after trial. SAG at 1. Thompson made a similar allegation during sentencing and filed a supporting declaration.

On appeal, he claims that he asked for his legal materials so that he could review witness statements and trial strategies, and that the absence of these materials "caused prejudice towards me and my trial." SAG at 2. Thompson's unsupported assertion of error does not demonstrate that prejudice resulted. We decline to consider this issue further.

No. 46012-2-II

We affirm Thompson's convictions.

_____
Lee, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Maxa, J.