IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34441-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHNATHON W. KAMPS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Johnathon Kamps appeals from his Asotin County convictions for

residential burglary and violation of a domestic violence court order, arguing that his

counsel should have visited him in jail rather than by telephone before resting the defense

case. We affirm.

FACTS

The facts relevant to this appeal are primarily procedural in nature. Mr. Kamps

was charged with first degree burglary and felony violation of a domestic violence court

order. There were questions concerning his competency to assist in his own defense due

to courtroom outbursts and unusual behavior, but after an evaluation, his counsel

informed the court there were no concerns about his competency.

After the first witness, Mr. Kamps' former wife, had testified for the prosecution, Mr. Kamps sought to replace his attorney because he would not pursue certain defenses and lines of questioning. The court denied the request for a new attorney and also denied a request to proceed pro se. Mr. Kamps then expressed a desire to absent himself from the remainder of the proceedings.

The trial court expressed "a great deal of consternation about somebody voluntarily removing themselves from their own trial" and strongly expressed its preference for Mr. Kamps to remain in the courtroom with his counsel. Report of Proceedings (RP) at 91. The court offered to allow Mr. Kamps to listen to the trial through the courthouse sound system from the holding room, but that idea also did not appeal to Mr. Kamps. After the court denied Mr. Kamps' requests for a "motion for pretrial motion" and to add his competency doctor as a witness, Mr. Kamps again stated his intent to remove himself. The court put on the record that Mr. Kamps made a knowing, intelligent, and voluntary waiver of his right to be present, and invited Mr. Kamps to return to the courtroom at any time he changed his mind. RP at 95-96. Mr. Kamps then returned to the county jail in Clarkston.

After Mr. Kamps' departure, defense counsel stated that if his client had not returned by the time the State rested its case, counsel would request that the court take a recess in order to allow him to travel from the courthouse in Asotin to the jail in Clarkston to find out if Mr. Kamps wanted to be present or to testify in his own defense.

2

RP at 97. The court indicated that in the interest of respecting the jury's time, defense

counsel should instead contact Mr. Kamps by telephone. Counsel agreed with that course

of action.

At the conclusion of the State's case, defense counsel called Mr. Kamps at the jail.

Defense counsel then related to the court:

> I can simply advise the Court that I inquired—oh—inquired telephonically
> if Mr. Kamps wished to testify. He advised me telephonically that he did
> not know that it was actually me, his attorney, talking to him and proceeded
> to hang up the phone. So, I don't have any instruction from Mr. Kamps as
> to how he wishes to proceed.

RP at 147.

The defense rested without calling witnesses. The jury returned guilty verdicts on

lesser included offenses of residential burglary and the gross misdemeanor version of

violation of a domestic violence court order. While the jury was deliberating, defense

counsel visited Mr. Kamps in jail to learn if he wished to be present for the return of the

verdicts. He declined.

The court imposed sentence for both the felony and the gross misdemeanor on the

same felony judgment and sentence form, with the entire 364-day term for the latter

crime suspended for 24 months. Clerk's Papers (CP) at 111. In addition to setting terms

of probation for the suspended sentence, the court also imposed 24 months of community

service. The Department of Corrections, however, declined to supervise because the

3

offense was not eligible. CP at 140. The defendant also signed an Acknowledgement of

Advice of Right on Appeal form that included the following provision:

> That if I fail to report to serve my sentence, fail to report to the Department
> of Corrections or otherwise become a fugitive from justice during the
> pendency of my appeal, the right to appeal is irrevocably waived.

CP at 119.

Mr. Kamps timely appealed to this court, but apparently had difficulties

complying with the terms of his probation. The trial court twice issued warrants for his

arrest and the State moved to dismiss the appeal due to flight. Noting that Mr. Kamps

had recently been captured, our commissioner denied the motion. The State moved to

modify that ruling and it was referred to the panel considering the appeal.

## ANALYSIS

Mr. Kamps presents as his sole issue the contention that the trial court erred in

asking defense counsel to confer by telephone concerning whether or not Mr. Kamps

would return for his defense. Before turning to that matter, we first consider the State's

argument that the appeal should have been dismissed once the bench warrant issued for

Mr. Kamps' arrest.

### Flight Doctrine

The State argues that Mr. Kamps has twice waived his right to appeal by conduct,

i.e., by failing to comply with the terms of his probation, leading to the issuance of arrest

warrants. We do not believe that the forfeiture doctrine extends that far.

4

There are two instances where the constitutional right to appeal may be relinquished. One instance is waiver. The right to appeal, like any constitutional right, can be waived when done in a knowing and voluntary manner. *E.g.*, *State v. Sweet*, 90 Wn.2d 282, 581 P.2d 579 (1978). A second instance is forfeiture by conduct. A common example, and the one implicated here, is forfeiture by flight from the jurisdiction. The theory is that a person who is not submitting to the authority of the court system cannot invoke the protections of that same system. *E.g.*, *State v. Johnson*, 105 Wn.2d 92, 97-98, 711 P.2d 1017 (1986); *State v. Koloske*, 100 Wn.2d 889, 892, 676 P.2d 456 (1984). As referenced in *Johnson*, the United States Supreme Court recognizes that if a litigant "withdraws himself from the power of the Court to enforce its judgment, he also withdraws the questions which he had submitted to the Court's adjudication." *Eisler v. United States*, 338 U.S. 189, 192, 69 S. Ct. 1453, 93 L. Ed. 1897 (1949) (Frankfurter, J., dissenting).

These two doctrines were both discussed at some length in a case factually similar to this one. *City of Seattle v. Klein*, 161 Wn.2d 554, 166 P.3d 1149 (2007). There, defendants in two separate actions became subject to arrest warrants for their failure to comply with sentence conditions during their respective appeals. *Id.* at 557-558. One of the two defendants was captured before a motion to dismiss his appeal was considered. *Id.* at 558. In both cases, the appellate court declined to dismiss the appeal due to lack of an intelligent waiver of the right to appeal. *Id.* At issue in the Washington Supreme

5

Court was the interplay of the fugitive flight doctrine (FFD) with the voluntary waiver

doctrine.

The court all but abandoned[1] the flight doctrine, although it did not purport to

overrule any of its prior cases on the topic, including either *Johnson* or *Koloske*, both of

which were discussed. *Id.* at 565. Specifically, the court concluded its opinion:

> The FDD cannot deprive someone of his or her constitutionally guaranteed
> right to appeal, even if applied after the appeal has been filed. Admittedly,
> the respondents did not attend later review hearings. There is, however, no
> evidence that the respondents made a voluntary, knowing, and intelligent
> waiver of their right to appeal their convictions, which had been timely
> filed.
>
> Here, the State did not even inform the respondents that it could ask—as
> sanction for nonattendance at court hearings—the court ordered loss of
> their appellate rights. Indeed, we have never held this could be an
> appropriate sanction. . . . We hold that dismissing the respondents' appeals
> based on their absence from a review hearing, without notice, would violate
> their constitutional right to appeal.

*Id.* at 567-568.

Here, the State argues that the notice provided Mr. Kamps by the Acknowledgement

of Advice of Right on Appeal form both satisfied *Klein* and worked to forfeit the appeal

---

[1] Noting the various sanctions that were available to a trial court whose rulings
were being disregarded, the court concluded by stating that the court "may not dismiss a
criminal appeal merely because the defendant does not comply with the court's orders on
tangential matters." 161 Wn.2d at 567.

even though Mr. Kamps was in custody by the time the motion was heard. We think that argument overstates the situation.

The advice form fills the hole noted by *Klein*—a person cannot voluntarily give up a right without knowing that he is doing so. Since Mr. Kamps was on notice that he possibly could lose his appeal right by not complying with the conditions of his sentence, he cannot present the objection raised in *Klein*. His case, therefore, more squarely raises the issue of whether the FFD can be equated with a knowing and voluntary waiver of a constitutional right. Whether the Washington Supreme Court is willing to go that far is a question we need not decide. Since the *Klein* court did not overrule the *Johnson* line of cases where dismissal was appropriate due to the flight of the appellant, we will assume that the FFD still has some vitality. Nonetheless, that does not aid the State in this situation.

Here, the prosecution argues not only that the FFD is valid and Mr. Kamps had notice that he could waive his rights by failing to comply, but, citing language from *Johnson*[2] noting that once a right is waived it cannot be reclaimed, goes further to argue that the appeal right was waived the moment Mr. Kamps fell out of compliance. We disagree.

---

[2] 105 Wn.2d at 97-98.

No authority supports the proposition that a waiver occurs prior to a court determining that a waiver has occurred.[3] Here, Mr. Kamps twice failed to appear after being ordered to show up in court, resulting in the issuance of bench warrants for his arrest. The failures to appear, coupled with the issuance of the warrants, provided *evidence* of the defendant's flight from the trial court's authority. Assuming the continued vitality of the FFD, this evidence might have allowed *this court* to conclude that Mr. Kamps had forfeited his right to appeal due to his decision to abscond. However, by the time this court was able to consider the question, Mr. Kamps had been taken into custody. He might have disregarded the trial court's authority (resulting in an appropriate sanction from the trial judge), but he had not fled from the court's jurisdiction and was again, even if unwillingly, subject to the trial court's authority. The FFD simply has no play when the defendant's flight has been arrested. Once captured, Mr. Kamps no longer was a fugitive who had fled the jurisdiction. At that point, this court had no factual basis for concluding that the FFD applied since Mr. Kamps was in custody.

---

[3] Another problem created by the automatic waiver argument, but not discussed by the parties, involves the trial court exercising some control of this court's docket if it had power to dismiss appeals being heard in a different court. Whatever authority trial courts wield over the defendant during a criminal appeal, they do not get to dismiss cases that are being heard in other courts.

We decline to modify the commissioner's ruling. The State's motion to dismiss for flight is denied.

*Absence from Trial*

Mr. Kamps argues that he was unable to reclaim his right to testify because his attorney called him in jail rather than visit him in person. There was no requirement that counsel personally visit the jail to confer with Mr. Kamps.[4]

A criminal defendant has a right guaranteed by the Sixth Amendment and the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and art. I, § 22 of our state constitution to be present at his or her own trial. *State v. Thomson*, 123 Wn.2d 877, 880, 872 P.2d 1097 (1994) (citing *United States v. Gagnon*, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985). However, this right is not absolute. *State v. Chapple*, 145 Wn.2d 310, 318, 36 P.3d 1025 (2001); *State v. DeWeese*, 117 Wn.2d 369, 381, 816 P.2d 1 (1991). A criminal defendant may waive the right to be present at trial so long as the waiver is knowing and voluntary. *State v. Rice*, 110 Wn.2d 577, 619, 757 P.2d 889 (1988). A waiver of the right to be present may be express or implied. *Thomson*, 123 Wn.2d at 881. Whether a voluntary waiver has occurred is determined by the totality of the circumstances. *Id.*

---

[4] We recognize the State's argument that any error was invited, but do not consider that argument further in light of our conclusion that no error occurred.

9

This court reviews the trial court's decision to proceed with trial in the defendant's absence for abuse of discretion. *State v. Garza*, 150 Wn.2d 360, 366, 77 P.3d 347 (2003). Discretion is abused where it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

At issue in this appeal is a factual circumstance from *Chapple*. There the defendant had been removed from the courtroom for repeated disruptions and threats of violence. 145 Wn.2d at 313-316. One of the questions presented on appeal was how to alert the defendant of his right to reclaim the ability to return to the courtroom, and whether the trial judge needed to be part of the process. *Id.* at 324-326. The court concluded: "the trial court's requirement that defense counsel speak with the defendant and report back to the court was appropriate" and "adequate." *Id.* at 326. The court added a footnote indicating that it would be "inappropriate for a trial court to insinuate into a decision to return," making "communication through defense counsel" "preferable." *Id.* at n.10.

Since defense counsel personally visited defendant Chapple in jail, Mr. Kamps argues that his counsel had an obligation to do so as well. However, the *Chapple* opinion does not go any further than designating defense counsel, rather than the trial judge, as the person who must communicate with the absent defendant and ascertain whether the client is interested in testifying or not. How that communication must take place is not in the control of the trial court.

No. 34441-0-III
*State v. Kamps*

Here, defense counsel asked about the possibility of an extended recess while he drove to the next town to visit Mr. Kamps in jail and the court responded by suggesting a telephone call so that the jury did not have an extended break during a one day trial. Under the circumstances, that was reasonable. If counsel had insisted on a personal meeting, a different question would be presented. However, counsel did not do so and did not claim that a telephone call would be inadequate. Then, while the jury was deliberating, defense counsel did visit with his client. At no time during trial or afterward did counsel suggest to the court that a different course of action was appropriate.

Mr. Kamps has not established that he was denied the opportunity to return to the courtroom, nor has he ever claimed such. Accordingly, he has not established any error.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, A.C.J.

11