FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 FEB 20 AM 8: 29

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON ,

Respondent,

v.

LAVELL DEMEATREOUS LEWIS,

Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. 75442-4-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: February 20, 2018

APPELWICK, J. — A jury convicted Lewis of promoting commercial sexual abuse of a minor. He argues that the trial court erred in denying his request to proceed pro se and violated his right to be present and to testify. He also argues that the trial court erred by not ordering a competency evaluation, erred by not giving a lesser included offense instruction, erroneously instructed the jury on the reasonable doubt burden, and that his third strike life sentence amounts to cruel and unusual punishment. We affirm.

## FACTS

Lavell Lewis met K.K., a minor, on a bus. Shortly after, he had sex with her and began marketing her to others for sex. K.K.'s father contacted police. The prosecutor charged Lewis with one count of promoting commercial sexual abuse of a minor, one count of rape of a child in the third degree, and one count of tampering with a witness.

At trial, Lewis made multiple disruptive outbursts, and was removed from trial after one serious outburst in which he threw some of his civilian clothes at the judge. The trial court gave Lewis multiple opportunities to return, provided that he assure the court that he would be on good behavior. He chose to return to his cell.

The jury ultimately convicted Lewis on all counts. The conviction for commercial sexual abuse of a minor was his third strike offense. He was therefore sentenced to life in prison. Lewis appeals.

## DISCUSSION

Lewis makes eight arguments in his brief, and numerous other arguments in a statement of additional grounds for review.

I.    Request to Proceed Pro Se

Lewis first argues that the trial court abused its discretion in denying his request to proceed pro se. Lewis made the request on the second day of trial, before the jury had been empaneled. Lewis justified his request as follows:

> I'm sorry for the holdup. It's not a stall tactic or anything. I just really believe that there's a lot of other issues that needs to be addressed in my case. I'm facing three strikes and, you know, it's a lot of (inaudible).
>
> . . . .
>
> . . . I'm sorry. It's a lot of interviews that haven't been done that need to be done that I think will be effective to my case. It's, you know, witnesses that haven't been contacted, you know. I raised the issue with Judge Roberts two and a half months ago about, you know, the motions for my burglary case to go first. He said deal with your attorney. I raised the issue about, you know, a lot of things as far as I just need to investigate, you know, there's people in Snohomish that needs to be investigated as far as, you know, alleged -- you know, people that had dealings with the alleged victim that, you know, that

2

she basically told things to them about the case, about my case, this case in general.

I just feel that it would be warranted that I, you know, have time to (inaudible) witnesses, contact, you know, my witnesses. I have nobody to -- I have nobody as far as defense of my witness. Nobody's -- I've been on phone deadlock for seven months for an alleged tamper with a witness that the state doesn't have, you know? And if they could present that today or whenever, they don't have it, Your Honor, and my case is being stagnated because they're trying to stop me from having a fair chance to fight, period.

The trial court engaged in a colloquy with Lewis. Lewis stated that he understood the ramifications of the third strike charge. He claimed to be familiar with some of the rules of criminal procedure. And, he explicitly stated that his decision was voluntary.

However, the trial court ultimately denied his request, because it viewed it as a deliberate attempt to delay the proceedings:

It is very clear to this Court based on my questioning of you, and also a review of the record as well, that this -- which is being made on the second day of trial -- is basically what you want is more time. It's a request for a continuance which is not grounds for this Court to grant you your request to represent yourself.

This case has been continued on many occasions. I believe it was 13. Some of them not because of you, Mr. Lewis, but there have been a lot of continuances. The issue of new witnesses that you claim you want to interview and discuss and work on, these six witnesses were first identified, I believe, on the first day of trial or perhaps the day before trial, I'm not sure, but very much last minute. And I -- the request for a continuance was denied by this Court. I did give your counsel quite a bit of leave to -- no, I'm speaking now -- quite a bit of leave if he's able to locate these individuals, if he even has names of them, I'm not sure, to reach out to them, to do interviews of them and to basically track these down as we are in trial. And I said that I would give him leave of a very generous nature to do that.

3

So what I hear you asking for is really, it's a deliberate attempt to delay this case, to continue this trial. That's what you really want. It's been again requested very many times. When the request is made during trial -- I realize the jury has not been impanelled yet but we are on the second day of trial -- this Court is given a lot of discretion to deny your request and that is what I'm doing.

Just days earlier, the trial court had denied a request from Lewis for a continuance related to the witnesses referenced by the court.

A. Standard of Review

The State and Federal Constitutions guarantee a criminal defendant the right to self-representation. U.S. CONST., amend. VI; Wash. Const., art. I § 22. This right is afforded to defendants, despite the fact that exercising the right will almost surely result in detriment to both the defendant and the administration of justice. State v. Fritz, 21 Wn. App. 354, 359, 585 P.2d 173 (1978). A defendant need not demonstrate technical knowledge of the law and the rules of evidence. Faretta v. California, 422 U.S. 806, 836, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

However, the right to proceed pro se is neither absolute nor self-executing. State v. Madsen, 168 Wn.2d 496, 504, 229 P.3d 714 (2010). When a defendant requests pro se status, the trial court must determine whether the request is unequivocal and timely. Id. Absent a showing that the request was equivocal or untimely, the court must then determine if the defendant's request is voluntary, knowing, and intelligent, usually by colloquy. Id. Courts must indulge in every reasonable presumption against a defendant's waiver of his or her right to counsel. Id.

4

Appellate courts review a denial of a request to proceed pro se for abuse of discretion. Id. In Fritz, this court provided for different levels of trial court discretion depending on the timing of the pro se request:

> The cases which have considered the timeliness of a proper demand for self-representation have generally held: (a) if made well before the trial or hearing and unaccompanied by a motion for continuance, the right of self-representation exists as a matter of law; (b) if made as the trial or hearing is about to commence, or shortly before, the existence of the right depends on the facts of the particular case with a measure of discretion reposing in the trial court in the matter; and (c) if made during the trial or hearing, the right to proceed pro se rests largely in the informed discretion of the trial court.

21 Wn. App. at 361. The trial court's discretion lies along a continuum that corresponds with the timeliness of the request to proceed pro se. State v. Breedlove, 79 Wn. App. 101, 107, 900 P.2d 586 (1995). Before trial, the defendant's interest in self-representation is paramount, but as the trial gets closer and once it begins, the interest in the orderly administration of justice becomes weightier. Id.

In State v. Honton, 85 Wn. App. 415, 417, 420, 932 P.2d 1276 (1997), the court held that Honton's request to proceed pro se fell within the middle of this continuum, when it was made on the first day of trial, but before jury selection. Similarly, Lewis made his request after trial had begun, during a discussion of preliminary trial matters, but before voir dire had begun. Therefore, the trial court had a measure of discretion.

B. Analysis

Lewis cites to Madsen, 168 Wash. 2d at 506, 509. There our Supreme Court found an abuse of discretion in denying a request to proceed pro se. Id. Madsen had initially requested pro se status on January 24, but the trial court deferred ruling, and instructed Madsen to confer with his newly assigned counsel. Id. at 501. On March 7, Madsen renewed his request, and alternatively suggested that he would fire counsel. Id. In response, the trial court deferred ruling and instead suggested that a competency hearing was warranted, although one was never ordered. Id. Trial did not occur until May. Id. at 503. The Supreme Court found that the request—made months before trial—should have been granted, because it was timely and well within Madsen's constitutional rights. Id. at 506-08. The Supreme Court also reasoned that the request was not equivocal merely because it was coupled with an alternative request to fire counsel. Id. at 507. The court, however, noted that a trial court may deny pro se status if a defendant is trying to postpone the administration of justice. Id. at 509.

Other cases have addressed the tension between efficient administration of justice and the right to proceed pro se. In State v. Stenson, 132 Wn.2d 668, 739 n.16, 940 P.2d 1239 (1997), the court found that the record supported the trial court's conclusion that a motion to proceed pro se would have hindered the administration of justice. Jury selection had already been ongoing for three weeks, and that the defendant could not have immediately assumed his own defense without considerable delay for him to prepare an adequate defense. Id.

The record shows that the trial court had an adequate basis for its decision. Shortly before he was denied pro se status, Lewis disclosed six new witnesses to his attorney. On January 28, Lewis sought a continuance, but the criminal presiding judge denied the request. Later that day, Lewis renewed his motion for a continuance before the trial judge (rather than the presiding criminal judge): "Mr. Lewis is requesting a continuance based on additional witnesses that he has provided me that may provide alibi witnesses." The trial judge denied this motion as well. Then, on February 1, he made his motion to proceed pro se. Unlike Madsen, Lewis did not make repeated requests months before trial. As the trial court observed in its detailed findings, administration of justice concerns were mounting and the numerous prior delays coupled with Lewis's eleventh hour request, justified the denial of the request. The trial court did not abuse its discretion in denying Lewis's request to proceed pro se.

II. **Right to Be Present**

Lewis next argues that the trial court violated his right to be present at all critical stages of the proceedings. He identifies three different ways that this right was violated. First, he argues that the trial court failed to inform him how to reclaim his right to be present. Second, he argues that the court also failed to inquire into whether Lewis's absence was voluntary. Third, he argues that he did not have adequate opportunity to return.

A criminal defendant has a constitutional right to be present at all critical stages of the trial. State v. Irby, 170 Wn.2d 874, 880, 246 P.3d 796 (2011). But, the right to be present is not absolute. State v. Chapple, 145 Wn.2d 310, 318, 36

P.3d 1025 (2001). A defendant's persistent, disruptive conduct can constitute a voluntary waiver of the right to be present in the courtroom. Illinois v. Allen, 397 U.S. 337, 343, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970); State v. DeWeese, 117 Wn.2d 369, 381, 816 P.2d 1 (1991). Once lost, this right can be reclaimed "as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." Allen, 397 U.S. at 343.

While recognizing that the appropriate method for dealing with a disruptive defendant should be left to the trial judge's discretion, the Chapple court set forth basic guidelines to assist trial courts in exercising their discretion. 145 Wn.2d at 320. First, the defendant must be warned that his conduct may lead to removal. Id. Second, the defendant's conduct must be severe enough to justify removal. Id. Third, the trial court should employ the least severe alternative that will prevent the defendant from disrupting the trial. Id. Fourth, the defendant must be allowed to reclaim his right to be present upon assurances that his or her conduct will improve. Id. These guidelines are not meant to be constraints on trial court discretion. Id. Rather, the guidelines are meant to ensure that the trial court's exercise of discretion is in a manner that affords defendants a fair trial while maintaining the safety and decorum of the proceedings. Id.

As a general matter, whether a defendant's constitutional right to be present has been violated is a question of law that we review de novo. Irby, 170 Wn.2d at 880. However, a trial court has wide discretion in determining the appropriate means to deal with a defendant's disruptive courtroom behavior. See Allen, 397

U.S. at 343; Chapple, 145 Wn.2d at 320. "No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." Allen, 397 U.S. at 343.

Lewis made an outburst at trial, in front of the jury, on February 11. It was not his first disruptive action. He accused the trial court and police of bias. He refused to stop the outburst despite the trial court's orders, and the jury was instructed to leave the courtroom as fast as possible, mid-outburst. He also threw his some of clothes at the judge. The trial court ordered him removed. Lewis does not challenge the validity of this initial removal.

Later in the day on February 11, after Lewis had calmed down and the trial court ordered him returned to court, the trial court told Lewis,

> So what I want to tell you now is unless you can assure this Court that you will be able to remain in the courtroom and participate in your trial without further disruptions I'm going to have you removed. And I will also tell you that you can reclaim your right to be present in this courtroom if you provide this Court with assurances that your conduct will improve. But what you cannot do is continue to disrupt trial in the way that you have today which you also did on February 8th. Do you understand that?

Lewis responded, "Yes. I totally understand what you're saying." The trial court then stated, "My question for you is a simple one: Do you want to participate in this court and can you give -- in this trial, and can you give this Court assurances that your conduct will not be disruptive?" He did not answer, and instead claimed violation of his First Amendment rights. The trial court again asked,

> So my question to you is direct. I see that you are not here in clothes that would be appropriate to proceed with trial and I don't know if you intend to participate, but if you are going to participate in

9

this trial you need to give me assurances that you will not be disruptive.

MR. [LEWIS][1]: I need some time to ponder on that question --

THE COURT: No more time. You've had hours.

MR. [LEWIS]: -- I have -- I'm highly upset. I want to go back to my cell as of now.

Lewis was removed from the courtroom.

On the next trial day, February 16, the parties discussed jury instructions without Lewis present. After that, the trial court brought Lewis to the courtroom and asked him if he would like to be present:

> THE COURT: Okay. You've been very clear on multiple occasions your views about how the proceedings have gone and you have made a record of that and that exists. So we're not going -- I'm not going to have you review again all the things that you do not feel are fair about these proceedings. You have remedies and I'm sure you will take them up later if you think it's appropriate.
>
> My question for you is a very direct one. You were removed from this courtroom for disruptive conduct on Wednesday and my question for -- and you indicated very clearly the next day that you did not want to be present, you stated that on the record, and so you weren't. I'm asking you again. We are about to start another day of testimony. My understanding is that today is the last day of testimony and that the state will be resting soon. My question for you is: Do you want to be present during trial, and if so, can you insure [sic] this Court that you will not be disruptive? That's the only question before you.
>
> MR. LEWIS: Yes, I want to be present. I want to testify. I would like to -- yeah, I'd like to, you know, tell the truth what's really happening because the picture that the prosecution is painting isn't true and the witnesses got up on the stand and lied --
>
> THE COURT: Okay, I'm going to stop you --

---

[1] It appears that the transcript contains a clerical error, and at times refers to Lewis by his attorney's name, even though the context makes clear that it is Lewis speaking.

MR. LEWIS: -- and lied as you can see.

THE COURT: -- I'm going to stop you. So you do wish to be present; is that correct?

MR. LEWIS: I don't really know. This is --

THE COURT: It's a yes or no answer, Mr. Lewis. It's a yes or no answer.

MR. LEWIS: I want to testify. That's the only thing. I want to testify and then I want to leave.

THE COURT: Okay. So you do not want to be present? I have two options for you.

MR. LEWIS: Yes.

THE COURT: Listen to me. Don't talk. Listen. You can be present as you have been before you were dismissed for disruptive conduct and be present next to your attorney. Or you can observe these proceedings in a separate courtroom outside the presence of this jury by video. That's a separate question from whether or not you are going to testify. If you want to remain in this courtroom you have to assure this Court that you will act appropriately and that there will be no further disruptive behavior on your part. Can you do that?

MR. LEWIS: Yes, I can do that. So I have a question, Your Honor. So if I say I don't want to be here and I don't even want to see the video, I don't want to do nothing but go back to my cell cuz -- can I just do that?

THE COURT: That's one of your options. You can have that choice. I've already discussed with you before on Thursday whether or not you wanted to participate further and you said you didn't. The only reason I brought you back here today was to give you another chance to remain in this courtroom and participate. You can opt yes or you can opt no or you can opt to watch it in [sic] video.

MR. LEWIS: Your Honor, I don't want to be here -- well, for the record last time I told you that I didn't want to be here it was particularly for that day. It wasn't for the whole thing. Can I ask a question about the jury instructions?

THE COURT: No. No.

11

. . . .

. . . Do you want to be present?

MR. LEWIS: Yes, I want to testify and I want to be present. That's my answer.

. . . .

MR. LEWIS: Your Honor, I don't know just send me back to my cell. I don't want to have no part of this. This is all a movie. This is script that you have wrote.

THE COURT: Okay.

MR. LEWIS: And you have a nice day.

. . . .

MR. GAUEN: Just so Mr. Lewis understands that if he voluntarily excuses his presence this morning that he will likely not be able to testify. So I'd like the Court to make a finding about whether he's unequivocally stated on the record his desire to testify or not.

THE COURT: Okay, Mr. Marchi, do you want to add anything?

MR. MARCHI: No, Your Honor.

THE COURT: Okay. So, Mr. Lewis, I want to make sure you understand that by removing yourself from the court voluntarily, which is what you've told me now several times you would like to do, you will lose your opportunity to testify.

MR. LEWIS: I thought you said I could testify but I don't want to take up no more of your time. Just leave me here. Just leave me here. I'll conduct myself fine and -- I guess I'll conduct myself fine. I don't want to hold up the court no more.

THE COURT: So you want to remain?

MR. LEWIS: Yes, yes, yes.

THE COURT: And I want you to tell me not that you're going to conduct yourself fine but that you are not going to engage in any disruptive behavior in this courtroom during this trial.

12

MR. LEWIS: I won't I won't.

. . . .

MR. LEWIS: Your Honor.

THE COURT: No, I don't think I need to hear from you, Mr. Lewis.

MR. LEWIS: Just take me back to my cell. I don't want to be here. I'm sorry. I'm sorry. That's fine with you guys all right.

THE COURT: This is my last -- this is my last --

MR. LEWIS: I want to go back to my cell.

THE COURT: Okay. The record will reflect that Mr. Lewis has asked now to go back to his cell voluntarily with an understanding that that will mean that he will not be present during the rest of these proceedings and will not be testifying.

MR. LEWIS: No testify, I guess, you know.

THE COURT: You said no testify?

MR. LEWIS: You guys already figured it out by yourself.

THE COURT: Okay, thank you. I'll ask that the officers --

MR. LEWIS: Thank you.

THE COURT: -- Mr. Lewis back to his cell.

MR. LEWIS: Thank you.

The next day, February 17, the parties gave their closing arguments without Lewis present, and the jury found Lewis guilty that afternoon. Lewis was present for the reading of the verdict.

A. <u>Informing Lewis of His Right to Reclaim Presence</u>

Under his right to be present claim, Lewis first argues that the trial court failed to inform him how to reclaim the right to be present.

He distinguishes <u>State v. Thompson</u>, 190 Wn. App. 838, 843, 360 P.3d 988 (2015), <u>review denied</u>, 185 Wn.2d 1012, 367 P.3d 1083 (2016). Thompson made a physical and verbal outburst during trial, similar to Lewis. <u>Id.</u> at 841-42. After officers subdued him, he was taken out of the room. <u>Id.</u> He returned in handcuffs and shackles. <u>Id.</u> at 842. The trial court told him that he would be taken to another room to view trial over video. <u>Id.</u> And, the trial court told him that he had the right to reclaim his presence if he assured the court that his behavior would improve and not be disruptive. <u>Id.</u> The trial court reminded him of that right at the end of that day of trial. <u>Id.</u> There, trial court stated that it would not inquire further into Thompson's desire to return, because it explicitly told him to notify his attorney or a corrections officer if he wished to return. <u>Id.</u>

On appeal, Thompson contended that the trial court had kept him out of the courtroom without explanation. <u>See id.</u> at 845. But, this court found no error. <u>Id.</u> It found it important that "the trial court made certain that Thompson understood the rules by which he could return to court." <u>Id.</u> And, notably, the court stated that it saw "no need to impose a requirement that a defendant be reminded daily about how he can reclaim his right to be present in the courtroom." <u>Id.</u> at 844.

Lewis argues that this case is different from <u>Thompson</u>, because although he was told that he could reclaim the right to be present by assuring good behavior, he was not told <u>how</u> he could reclaim that right.

He is correct, unlike Thompson, the trial court here did not instruct Lewis to tell his attorney if and when he wanted to return. But, also unlike Thompson, the trial court here gave Lewis repeated in-person opportunities to regain the right. It brought him back to court when court reconvened the day of the outburst to explain how he could regain the right to be present. When Lewis refused, the trial court instructed Lewis's attorney to counsel him over the intervening weekend regarding his presence at trial. The morning after that weekend, he was returned to court, but still did not give the proper assurances when the trial court gave him the opportunity. The next day, on February 17, the trial court heard from Lewis's counsel about Lewis's wishes regarding presence, but they had not changed.[2]

While the trial court did not inquire with Lewis in person that day, Thompson recognized that there is no requirement that defendants receive daily reminders about the right to be present. 190 Wn. App at 844. And, Lewis returned to trial later that day so that he could be present when the verdict was read. Lewis's opportunities to reclaim his right were greater than the safeguards in Thompson and were adequate to apprise him of the manner in which he could regain his right to be present.

There was no error in explaining how Lewis could regain the right.

---

[2] Specifically, the trial court found that "it sounds like he's had an opportunity to speak to counsel last evening and presumably if he wanted to return to court or even observe it via video feed he would have instructed his counsel to tell the Court and we would have proceeded from there."

B. Inquiry into Voluntariness

Lewis's next argues that the trial court failed to adequately inquire into whether Lewis's absence was voluntary. The determination of whether the defendant's absence is voluntary depends upon the totality of the circumstances. State v. Garza, 150 Wn.2d 360, 367, 77 P.3d 347 (2003). Courts look to whether the trial court (1) made sufficient inquiry into the circumstances of a defendant's disappearance to justify a finding whether the absence was voluntary, (2) made a preliminary finding of voluntariness, when justified, and (3) gave the defendant an adequate opportunity to explain his absence when he is returned to custody and before sentence is imposed. Id. In performing this analysis, the court indulges every reasonable presumption against waiver. Id. at 367-68. However, the burden is on the defendant to show that the absence was not voluntary. Id. at 368.

Lewis analogizes to Garza. Garza was late to trial on multiple mornings. 150 Wn.2d at 363-64. One morning, he called his attorney to tell him he was running late, something he had not previously done. Id. at 369. When Garza did not arrive at the arranged time, the trial judge immediately determined it was a voluntary absence, and trial proceeded without Garza. Id. at 364. Our Supreme Court found that this was error, because the inquiry into voluntariness was insufficient. Id.

Lewis argues that the trial court's inquiry here was similarly limited. But, the record does not support that conclusion. The trial court's actions satisfy the three factors set out in Garza. First, it adequately inquired, as shown by the repeated questioning. Over and over again, despite Lewis's waffling, the trial court asked

16

him whether he wanted to be present. Second, it made an explicit finding of voluntariness, once it was clear that Lewis would not give a consistent answer as to his behavior. Finally, by tolerating Lewis's numerous back and forth decision, the trial court gave Lewis sufficient opportunity to explain his situation. In Garza, the trial court merely assumed that Garza was deliberately late to the proceedings due to past behavior. 150 Wn.2d at 369. The trial court made no such assumption here.

The trial court did not violate Lewis's right to be present by failing to inquire into voluntariness.

### C. Opportunity to Reclaim

Third, Lewis argues that he did not have adequate opportunity to regain his right to be present. Under Chapple, a defendant must have the right to reclaim his presence upon assurances that his conduct will improve. 145 Wn.2d at 320. But, Chapple does not set out specific requirements for trial court involvement in reclaiming the right, and the amount of appropriate involvement may vary. See id. at 325-26.

Here, on February 11, the trial court had Lewis removed after a physical outburst. Later that day, it invited him to return. But, he refused to assure the trial court that his behavior would improve. The next trial day, February 16, the trial court again brought Lewis back to court and asked him the same questions. He again declined. Throughout these colloquies, the trial court tolerated Lewis changing his mind repeatedly. The next day, on February 17, the jury returned with a verdict guilty. Lewis was present for the reading of the verdict.

Lewis cites no authority instructing that he must be asked every day whether he would like to return to trial and assure the trial court that he will be on good behavior. Given Lewis's repeated failure to give unequivocal assurances of good behavior and apparent attempts at delay in proceeding with trial, this was an appropriate exercise of discretion. The trial court did not deny Lewis adequate opportunity to reclaim his right to be present.

D. Absence During Jury Instruction Discussion

Lewis argues that the trial court should not have had a discussion about jury instructions with counsel on February 16, before it engaged with the colloquy with Lewis.

A defendant has a right to be present at a proceeding whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge. State v. Slert, 186 Wn.2d 869, 875, 383 P.3d 466 (2016). The defendant therefore does not have a right to be present during in-chambers or bench conferences between the court and counsel on legal matters at least where those matters do not require a resolution of disputed facts. In re Pers. Restraint of Lord, 123 Wn.2d 296, 306, 868 P.2d 835 (1994).

Jury instructions generally involve legal, rather than factual issues. State v. Bremer, 98 Wn. App. 832, 835, 991 P.2d 118 (2000). In the absence of some extraordinary circumstance in which the defendant's presence would have made a difference, a discussion involving proposed jury instructions is not a critical stage of the proceedings. Id. Lewis argues that the unanswered question of whether Lewis would be testifying played a critical role in determining what instructions to

give. But, the court explicitly reserved its ruling on these matters until it heard from Lewis regarding his desire to return to trial, and whether he would give assurances of good behavior. Lewis cites no legal authority suggesting that this circumstance is extraordinary such that his presence was required at the jury instructions discussion.

### III. Right to Testify

Lewis next argues that the trial court denied him his right to testify by excluding him from the proceedings. Numerous times during his colloquies with the trial court, Lewis clearly stated that he wanted to testify. The trial court advised him that this would require him to be on good behavior while in the courtroom. He did not provide the necessary assurances. Conversely, Lewis also stated numerous times that he would rather be returned to his cell. He now argues that the circumstances amounted to an improper deprivation of his right to testify.

The United States Supreme Court recognized a criminal defendant's right to "take the witness stand and to testify in his or her own defense" in Rock v. Arkansas, 483 U.S. 44, 49, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987). In Washington, a criminal defendant's right to testify is explicitly protected under our state constitution. State v. Robinson, 138 Wn.2d 753, 758, 982 P.2d 590 (1999). This right is fundamental, and cannot be abrogated by defense counsel or by the court. Id. The waiver of the right to testify must be made knowingly, voluntarily, and intelligently, but the trial court need not obtain an on the record waiver by the defendant. Id. at 758-59.

However, this right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. Chapple, 145 Wn.2d at 326. A trial judge must be careful to properly balance the constitutional rights of the defendant against the necessary decorum of the courtroom. Id. at 327. Therefore, a trial judge should consider the gravity of the past disruptions, probability of continued disruption, and the possibility of violence if the defendant takes the stand. Id. Great deference is to be given to a trial judge's decision that a defendant had waived his right to testify through his or her conduct. Id. at 328.

In Chapple, the defendant was similarly unable to testify because of concerns over his conduct at trial. Id. At trial, Chapple spoke out several times when the jury was and was not present, became increasingly hostile with the trial court, and insulted the jury. Id. at 313-14. The most serious outburst occurred when, in front of the jury, Chapple referred to the trial as a Ku Klux Klan meeting, called the jury an expletive, and stated he did not care if the trial court took him back to prison. Id. at 314-15. He was removed from trial. Id. at 315. Chapple told his attorney that he would only testify if he could speak freely to the jury. Id. at 317. Upon hearing testimony that Chapple was extraordinarily strong, had broken out of handcuffs before, and had a violent history, the trial court ruled that Chapple must be excluded, and that he therefore waived his right to be present and to testify. Id. at 316-17. The Supreme Court upheld the trial court's decision. Id. at 328-29. In holding that the trial court acted within its discretion, the Supreme Court cited Chapple's "gravely disruptive" actions, his unwillingness to conform to testimony format, and safety concerns. Id. at 328.

Here, like Chapple, Lewis exhibited highly disruptive behavior. He addressed the jury when he was not permitted to. He accused the jury and trial court of racism and bias. During the February 11 outburst, he took off his civilian clothes, exposing his red jail shirt, and threw them at the trial judge. And, after that outburst, he refused to give a concrete answer to the trial judge on whether he would behave appropriately. The trial court observed that this outburst was not his first instance of misbehavior. It described that situation as having "safety issues abounding for everyone." Although this case is distinguishable from Chapple in that Lewis did not refuse to adhere to testimony format, he did refuse to assure the trial court of good behavior. And, Chapple had not engaged in any physical wrongdoing such as throwing items at the trial judge, but Lewis did.

Lewis contends that this case is more similar to In re Det. of Haga, 87 Wn. App. 937, 943 P.2d 395 (1997), overruled on other grounds by Robinson, 138 Wn.2d at 768. In this sexually violent predator commitment case, Haga's attorney expressed to the trial court doubt as to Haga's veracity, the relevancy of his testimony, and his competency. Id. at 938. But, the attorney stopped short of stating that Haga intended to commit perjury. Id. at 940. Haga personally demanded to the trial court that he be allowed to testify about some of the trial exhibits so as to convey his honesty and rebut the testimony of an expert. Id. at 938. The trial court refused to allow Haga to take the stand. Id. This court reversed, holding that Haga's unequivocal demand to testify trumped his counsel's concerns. Id. at 940.

Lewis contends this case is like <u>Haga</u>, because he repeatedly and unequivocally stated that he wanted to testify. But, here Lewis refused to give assurances to the trial court that he would act appropriately. Unlike <u>Haga</u>, immediately after Lewis told the trial court to "[j]ust leave me here" in the courtroom so that he could testify, he told the trial court to "[j]ust take me back to my cell." Lewis contends that this conflates the right to be present with the right to testify. But, Lewis was unequivocally told that his decision regarding presence would determine whether he would be able to testify. The trial court properly found that Lewis waived his right to testify.

IV. <u>Competency</u>

Lewis next argues that the trial court abused its discretion in not ordering a competency evaluation. Lewis made no such motion, but he argues that he showed a number of signs during trial that should have led the trial court to order an evaluation sua sponte and that failure to do so was an abuse of discretion.

A. <u>Competency Evaluation</u>

Whenever there is reason to doubt a defendant's competency, the trial court, on its own motion, or on the motion of a party, shall order a competency evaluation. RCW 10.77.060(1)(a). The determination of whether a competency evaluation should or should not be ordered is reviewed for abuse of discretion. <u>State v. Heddrick</u>, 166 Wn.2d 898, 903, 215 P.3d 201 (2009). The factors informing this decision include the defendant's demeanor, conduct, appearance, personal and family history, past behavior, medical and psychiatric reports, and

the statement of counsel. State v. Fleming, 142 Wn.2d 853, 863, 16 P.3d 610 (2001).

Lewis analogizes to Drope v. Missouri, 420 U.S. 162, 164, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975). There, the Supreme Court found that Drope was denied a fair trial when the trial court did not make further inquiry into his mental competence. Id. at 173, 179-80. The trial court had denied a motion for a continuance to allow for such an inquiry. Id. at 164-65. Drope's wife had testified regarding "bizarre" abuse and actions, including violent attacks on her, and deliberately rolling down stairs when he did not get his way. Id. at 165-66. She believed he was sick and needed psychiatric care. Id. at 166. One morning, Drope did not appear at trial because he shot himself, but the trial judge denied Drope's counsel's request for a mistrial, and instead insisted that the matter move to trial. Id. at 166. The Supreme Court reversed, holding that the trial court failed to give proper weight to information suggesting incompetence that came to light during trial. Id. at 179.

Lewis's situation does not resemble Drope's. Lewis made a verbal outburst. He removed his civilian clothes, exposing his jail attire, and threw them at the judge. He made isolated references to voices in his head, and that "I don't know if this trial is even real right now." He also stressed that he had been in "the hole" for seven months. He made odd statements, such as, "This is all a movie." He also stated that the police were "crooked" and having sex with the victim and witnesses. However, these facts demonstrate frustration, but do not necessarily demonstrate a competency question.

23

And, in the morning before the final day of trial, the trial court expressed its belief that Lewis was competent:

> The last thing I want to discuss on [the] record is yesterday morning when Mr. Lewis was brought in he intimated or made statements suggesting that he was not aware of what was going on. He changed his mind six or seven times about whether or not he wanted to be here; he talked about, you know, "I'm not clear what's happening," and the Court did not find and nor was there any motion raised by Mr. Marchi regarding Mr. Lewis's competency.
>
> I believe that this Court based on his conduct at trial to date it's clear to me that Mr. Lewis understands the nature of these proceedings against him and has been in fact quite able to participate in his or her own defense. There is no indication to me that he cannot or that he is in any way incompetent pursuant to RCW 10.77.010. He has made various motions through his attorney; he has re-raised things that did not go his way; he has been able to track evidentiary rulings by this Court, and later voiced his objection to them; he has at all times, frankly, when -- before he had to be removed due to his disruptive conduct, given this Court the impression that he's very aware of what's going on and if anything is attempting to stop the course of this trial through various conduct, motions, and actions.

Lewis does not challenge the trial court's factual account.[3] He instead argues that the trial court failed to act in response to his behavior when it should have. But, the facts support a conclusion that the trial court not ordering an evaluation on its own motion was a sound exercise of discretion.

---

[3] Lewis points to a statement by the trial court that "without anything presented to me in the way of a motion or request [for an evaluation] there isn't much I can do." Lewis argues that this shows that the trial court was under the erroneous impression that it could not order a competency evaluation sua sponte. But, the trial court's explicit findings show that, even without a motion, it considered the possibility of a competency evaluation, and made its decision pursuant to the appropriate statute, RCW 10.77.010.

## B. Motion for New Trial

Lewis also argues that the trial court erred by denying his CrR 7.5(a) posttrial motion for a new trial. Appellate courts review a decision on a motion for a new trial for abuse of discretion. State v. McCarty, 90 Wn. App. 195, 199-200, 950 P.2d 992 (1998).

After trial, Lewis brought a motion for a new trial seeking funds for a psychiatric evaluation. The trial court granted the motion for the psychiatric evaluation. The evaluation found Lewis was incompetent with respect to his waiver of his rights to be present and testify. But, the trial court, nevertheless, found Lewis to be competent, and denied the motion for a new trial. Lewis argues that the trial court erroneously substituted its judgment for that of the mental health expert. But, the trial court had observed his conduct throughout trial and documented those observations in its findings the last day of trial. And, the mental health expert conceded some weaknesses in his posttrial examination: the conclusions and facts were grounded in Lewis's self-reporting rather than medical records, and Lewis was "vague historian" such that " '[n]ot much detail could be gleaned from interviewing' " Lewis.[4] The trial court has discretion on how to weigh this evidence. State v. Coley, 180 Wn.2d 543, 551, 326 P.3d 702 (2014). It properly did so here. We find no abuse of discretion.

---

[4] Lewis also argues that, if the trial court had doubts about the adequacy of the evaluation, it was required to order a new evaluation under RCW 10.77.060(1)(a). But, the trial court ruling was not grounded solely in the inadequacy of the evaluation. It cited its own observations of Lewis throughout the course of trial.

V.  Lesser Included Offense

Lewis next contends that the trial court erred by denying his request to give a lesser included offense instruction for second degree promoting prostitution. He argues that, in addition to an instruction on the charged offense of commercial sexual abuse of a minor, the jury should have been instructed on the lesser included offense of second degree promoting prostitution. He argues this is so, because evidence in the record suggested that Lewis did not know that the victim was a minor.

When the evidence supports it, a trial court should give a lesser included offense instruction. State v. Workman, 90 Wn.2d 443, 447, 584 P.2d 382 (1978). In Workman, our Supreme Court set out a two prong test to determine whether a lesser included offense should be given. Id. at 447-48. First, each of the elements of the lesser offense must be a necessary element of the offense charged. Id. The State conceded that this "legal" prong is satisfied here, and it is not at issue.

The second, "factual," prong requires that the evidence in the case must support an inference that the lesser crime was committed. Id. at 448. The evidence is viewed in the light most favorable to the party requesting the lesser included offense instruction. State v. Fernandez-Medina, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000). The instruction should be administered if the evidence would permit a jury to rationally find a defendant guilty of the lesser offense and acquit him of the greater. Id. at 456. However, it is not enough that the jury might simply disbelieve the State's evidence. Id. Instead, some evidence must be presented that affirmatively establishes the defendant's theory on the lesser included offense

before an instruction will be given. Id. We review the trial court's decision on this second, factual prong for abuse of discretion. State v. Henderson, 182 Wn.2d 734, 743, 344 P.3d 1207 (2015).

Here, K.K. testified that she explicitly told Lewis that she was 15. . But, when she told him that, he responded, " 'You shouldn't be telling people you're 15 . . . you're 18.' " However, when police were posing as the victim via text message, Lewis responded to one message by saying, " 'You said you were 19.' " Lewis argues that, viewing this in the light most favorable to Lewis, a rational jury could have found that he thought that the victim was not a minor.

But, relying on a child victim's claim to be over eighteen is not a defense to commercial sex abuse of a minor. RCW 9.68A.110(3). The defendant may only use a mistake of age defense if the defendant made a bone fide effort to ascertain the victim's age through a piece of identification:

> [I]t is not a defense that the defendant did not know the alleged victim's age. It is a defense, which the defendant must prove by a preponderance of the evidence, that at the time of the offense, the defendant made a reasonable bona fide attempt to ascertain the true age of the minor by requiring production of a driver's license, marriage license, birth certificate, or other governmental or educational identification card or paper and did not rely solely on the oral allegations or apparent age of the minor.

Id. Lewis does not contend, nor does he present any evidence, that he made a bona fide attempt to ascertain the victim's age through these acceptable types of identification. Thus, even if, as Lewis claimed the victim told him that she was 19, it would not be a defense to the commercial abuse of a minor. This fact—the only factual contention that Lewis relies on for this argument—did not affirmatively

27

establish that the lesser included offense was committed, rather than the greater offense. Therefore, his argument fails.[5]

The trial court did not abuse its discretion in declining to give the lesser included offense instruction.

VI.    Reasonable Doubt Instruction

Lewis also challenges the trial court's preliminary remarks and jury instructions regarding reasonable doubt. Before completion of voir dire, in its preliminary remarks to prospective jurors, the trial court stated,

> If, after your deliberations, you do not have a doubt for which a reason can be given as to the defendant's guilt, you are satisfied beyond a reasonable doubt. If, after your deliberations, you do have a doubt for which a reason can be given as to the defendant's guilt you are not satisfied beyond a reasonable doubt.

Lewis did not object. The trial court later gave the pattern reasonable doubt instruction: "A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at 93 (4th ed. 2016) (WPIC). Lewis

---

[5] Lewis cites an unpublished portion of an opinion of this court, State v. Young, 192 Wn. App. 850, ¶ 51-53, 369 P.3d 205 (2016) (partially published opinion), that held that counsel was not ineffective in failing to request a lesser included offense of promotion of prostitution. There, the offenses at issue were the same as in Lewis's case, and the defendant claimed lack of knowledge of the victim's age. Id. Lewis cites this unpublished decision, because, while it noted in a footnote that the statutory defense would not be available, RCW 9.68A.110(3), it stated in a single sentence, without analysis, that the factual Workman prong had been met. However, the defendant had not requested it, and therefore the court addressed the issue as part of an ineffective assistance of counsel claim for not requesting it. Id. at ¶ 51-53. It found no ineffective assistance of counsel. Id. at ¶54.

We disagree with Young's perfunctory resolution of the Workman factual prong, to the extent that it diverges from our analysis here.

argues that the preliminary remarks misstated the nature of reasonable doubt, and that the later pattern instruction was insufficient to cure it.

Our Supreme Court addressed a similar argument in State v. Kalebaugh, 183 Wn.2d 578, 584, 355 P.3d 253 (2015). There, without objection, the trial court gave the same preliminary instruction: " 'If after your deliberations you do not have a doubt for which a reason can be given as to the defendant's guilt, then, you are satisfied beyond a reasonable doubt.' " Id. at 582 (emphasis added). However, like here, the trial court's final instructions mirrored the WPIC. Id. at 582. The Supreme Court found that the error was harmless, because it did "not find it plausible to believe that the jury retained these particular oral remarks made before jury selection three days earlier, ignored the other [correct] oral and written instructions, and applied the incorrect legal standard." Id. at 586.

Lewis concedes that this case is similar to Kalebaugh. Rather than distinguish Kalebaugh, he argues that it "should be overruled." But, this court is bound by Kalebaugh. This minor error in the preliminary reasonable doubt instruction was harmless.

VII.    Cumulative Error

Lewis argues that cumulative error warrants reversal. But, because we find no error besides the harmless instructional error, we find no cumulative error.

VIII.    Cruel and Unusual Punishment

Lewis next argues that his third strike life sentence violates the prohibition on cruel and unusual punishment of the Eighth Amendment to the United States Constitution, and article 1, section 14 of the Washington State Constitution. Our

29

Supreme Court has held that the state constitutional provision is more protective than the Eighth Amendment in this context. State v. Witherspoon, 180 Wn.2d 875, 887, 329 P.3d 888 (2014). Consequently, if we hold that Lewis's life sentence does not violate the more protective state provision, we need not further analyze the sentence under the Eighth Amendment. Id.

Lewis was sentenced to life as a persistent offender under the Persistent Offender Accountability Act (POAA) of the Sentencing Reform Act of 1981, because this was his third conviction for a violent offense. RCW 9.94A.570. Washington courts look to four factors in determining whether such sentences are barred as cruel and unusual punishment under the State Constitution: (1) the nature of the offense, (2) the legislative purpose behind the statute, (3) the punishment the defendant would have received in other jurisdictions, and (4) the punishment meted out for other offenses in the same jurisdiction. State v. Fain, 94 Wn.2d 387, 397, 617 P.2d 720 (1980).

State v. Rivers, 129 Wn.2d 697, 713, 921 P.2d 495 (1996), is instructive with respect to the "nature of the offense" factor. There, the court had no trouble finding that the nature of the offense did not weigh in favor of the defendant in his challenge to his second degree robbery sentence. Id. at 713. It reasoned that second degree robbery is defined under the statute as a "most serious offense," and that the court had previously found similarly for a less serious offense. Id. at 713. In Lewis's case, promoting sexual abuse of a minor is a class A felony, which is also a "most serious offense." See RCW 9.68A.101(2); RCW 9.94A.030(33)(a). This factor does not weigh in Lewis's favor.

30

Turning to the second factor, the purpose of the statute, our Supreme Court has reasoned that "the purposes of the persistent offender law include deterrence of criminals who commit three 'most serious offenses' and the segregation of those criminals from the rest of society." Rivers, 129 Wn.2d at 713. Nothing in Lewis's case suggests that we should depart from our Supreme Court's application of the factor with respect to the POAA. This factor also does not weigh in favor of Lewis.

Third, looking to similar crimes in other states, Lewis cites Virginia's three strikes law, that does not include promoting sexual abuse of a minor as a strike offense. VA. CODE ANN. § 19.2-297.1. But, this singular authority is insufficient to render the punishment cruel and unusual.

Finally, the fourth factor looks to the punishment that Lewis would receive for other offenses in Washington. Fain, 94 Wn.2d at 393. Lewis's crime, promoting commercial sexual abuse of a minor, is a level XII "most serious offense" under RCW 9.94A.030(33)(a) and 9.94A.515. In Rivers, 129 Wn.2d at 702, 714, our Supreme Court held that the fourth factor in the cruel and unusual punishment evaluation did not weigh in defendant's favor upon conviction of second degree robbery, a level IV most serious offense. RCW 9.94A.515. Given that promoting a commercial sexual abuse of a minor is a level XII most serious offense, and other offenses of lower seriousness level have nonetheless been held not to be cruel and unusual, this factor does not weigh in Lewis's favor.

Lewis's sentence does not violate the prohibition on cruel and unusual punishment.

31

IX. Statement of Additional Grounds

Lewis also makes numerous arguments in a statement of additional grounds for review (SAG).

A. *Brady* Violation

Lewis argues that the State withheld evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). After the verdict, Lewis moved for a new trial. He argued that the State had failed to timely disclose evidence in its possession. That evidence, provided to Lewis mid-trial, was a "Polaris Report." It identified information regarding the victim, and provided a description of a different suspect. Lewis represented to the trial court that it contained information about a tip by the victim's father, who identified several individuals that may have been suspects. The State represented to the trial court that, as soon as it learned of the existence of this evidence, it provided it to Lewis, and that the prosecutor had no knowledge of its existence prior to that time.

To establish a Brady violation, Lewis must show three things: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. State v. Mullen, 171 Wn.2d 881, 895, 259 P.3d 158 (2011). Lewis does not identify the Polaris report in the record, and thus he does not satisfy any of the three Brady elements. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.3d 549 (1992) (explaining that arguments without citation to the record or authority need not be considered).

32

B. Right to Present a Defense

Next, Lewis contends that the trial court denied him his right to present a defense when it refused to grant a continuance at the same time that he asked to proceed pro se. This argument tracks the argument made in his brief regarding his request to proceed pro se. That argument is addressed in section I. However, in his SAG, Lewis characterizes the denial of a continuance argument as a violation of a right to present a defense.

This court reviews the denial of a continuance for abuse of discretion. State v. Downing, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004). We will not disturb the trial court's decision unless the appellant or petitioner makes a clear showing that the trial court's discretion is manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. Id. at 272-73. Here, Lewis can do neither. The trial had previously been continued 13 times. The trial court, in a detailed oral ruling, explained that it viewed Lewis's request as a deliberate attempt to interfere with the trial process. The request was made after trial had begun. And, the trial court gave Lewis wide latitude to find and interview any additional possible witnesses as trial progressed. The denial of the continuance did not violate Lewis's right to present a defense.

C. *Petrich* Instruction

Lewis also argues that the trial court erred by not giving a unanimity instruction under State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), overruled on other grounds by State v. Kitchen, 110 Wn.2d 403, 405-06, 756 P.2d

105 (1988). Lewis does not adequately support his argument, and thus it is not grounds for reversal. Cowiche, 118 Wn.2d at 809.

D. Admission of Polaris Report

Lewis next contends that admission of the Polaris report violated ER 702, ER 401, and ER 402. As a baseline matter, given that Lewis does not identify the Polaris report within the record, it is unclear whether it was even entered into the trial court record. He also argues that fact witness Detective Maurice Washington effectively testified about the report as an expert without the requisite qualifications. But, he does not identify what aspects of his testimony amounted to expert opinion. And, he mentions ER 401 and 402 in a single sentence, and does not give further explanation as to why they are relevant. The argument is not sufficiently supported. It is insufficient to warrant reversal. See Cowiche, 118 Wn.2d at 809.

E. Prosecutorial Misconduct

Lewis argues that the State committed prosecutorial misconduct by introducing the Polaris report, which he contends lacked adequate foundation and was insufficiently reliable. But, while the record shows that the parties discussed the Polaris report with the trial court, Lewis has not cited to its admission into evidence. To the extent that the prosecutor deliberately withheld a portion of the evidence, or that it was provided late, that would go to a Brady argument, which is discussed above. Lewis fails to establish prosecutorial misconduct.

F. Ineffective Assistance of Counsel

Finally, Lewis argues that he received ineffective assistance of counsel for failing to object to the Polaris report. But, it is not clear that it was ever even offered or admitted. He does not establish that counsel was ineffective. See Cowiche, 118 Wn.2d at 809.

We affirm.

_Appelwick, J._

WE CONCUR:

_Leach, J._     _Dwyer, J._